Dehn Motor Sales, LLC et al. v. Joseph Schultz et al., No. 94, Sept. Term, 2013

**LOCAL GOVERNMENT TORT CLAIMS ACT – NOTICE REQUIREMENT-SUBSTANTIAL COMPLIANCE WITH NOTICE REQUIREMENT**

A used-car business which filed tort claims asserting violations of Articles 19, 24, and 26 of the Maryland Declaration of Rights against police officers who seized vehicles from its sales' lot without a court order or warrant did not substantially comply with the notice requirement when, more than two years earlier, it had filed an action for replevin seeking return of the vehicles and loss-of-use damages.   The replevin action did not forewarn, as a notice of claim must, either explicitly or implicitly, that a subsequent suit for unliquidated damages would follow.

**SECTION 1983 OF TITLE 42 OF THE UNITED STATES CODE – CONSTITUTIONAL TORTS – QUALIFIED IMMUNITY**

Police officers who ordered the towing of vehicles from a used-car lot without a court order or warrant under the belief that the vehicles posed environmental and fire hazards were entitled to qualified immunity, because there was no clearly-established law that prohibited the towing of vehicles under such circumstances.

Circuit Court for Baltimore City, Maryland
Case No: 24-C-08-002096
Argued: June 5, 2014

IN THE COURT OF APPEALS OF
MARYLAND

No. 94

September Term, 2013

DEHN MOTOR SALES, LLC, et al.

v.

JOSEPH SCHULTZ, et al.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Rodowsky, Lawrence F.
(Retired, Specially
Assigned),
                    JJ.

Opinion by Battaglia, J.

Filed: July 22, 2014

In this case we are called upon to explore, once again, what actions may constitute substantial compliance with Section 5-304 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol., 2008 Supp.),[1] the notice requirement of the Local Government Tort Claims Act (LGTCA or the Act), which requires a claimant suing a local government[2] or its employees to provide a written notice of claim to the government within 180 days of the alleged injury. We also must decide whether two Baltimore City police officers, Officer Joseph A. Schultz, Jr. and Sergeant Anthony Proctor, Respondents, are entitled to qualified immunity from federal constitutional claims asserted by Petitioners, Dehn Motor Sales, LLC, et al. (Dehn Motor)[3] under Section 1983 of Title 42,

---

[1] Section 5-304 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol., 2008 Supp.), in effect at the time these proceedings were instituted, provided in relevant part:

> (b) *Notice required.* –(1) Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.
>
> * * *
>
> (3) The notice shall be in writing and shall state the time, place, and cause of the injury.

All references to the Maryland Code are to the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol., 2008 Supp.), unless otherwise noted.

[2] The Local Government Tort Claims Act ("LGTCA") includes "[t]he Baltimore City Police Department." Section 5-301(d)(21) of the Courts and Judicial Proceedings Article.

[3] We utilize "Dehn Motor" to refer to all of the Petitioners herein consistent with the nomenclature used by the parties throughout the trial court and appellate proceedings. The Petitioners include Farzan Mohamed, Dehn Motor Sales, LLC, Progressive Car Rental, LLC, and Brooklyn Progressive Auto Paint Group.

United States Code.[4]   Specifically, we granted certiorari to consider:

I.      Whether the Court of Special Appeals erred in affirming the dismissal of the state law claims against the respondents because adequate notice was allegedly not given under the Local Government Tort Claims Act even though a replevin action filed by the petitioners gave notice of constitutional violations by the police and where the City Solicitor litigated the replevin action for three years, thus ensuring an adequate investigation, and where the respondents cooperated with the City Solicitor during the course of the three year investigation prior to the filing of the underlying case in this matter?

II.     Whether the Court of Special Appeals committed error in affirming summary judgment when it concluded that the respondent police officers were constitutionally justified in seizing the petitioners' 67 vehicles without a warrant or other court order because of an alleged emergency, when that fact was disputed as a pretext by the petitioners and where the trial court expressly stated that exigent circumstances were not present?

*Dehn Motor v. Schultz*, 435 Md. 266, 77 A.3d 1084 (2013).

The genesis of the instant matter occurred when Dehn Motor[5] filed an action for

replevin in the District Court of Maryland, sitting in Baltimore City, against Alford H.

---

[4] Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[5] Brooklyn Progressive Auto Paint Group did not participate in the replevin action.

Foxx, the Director of the Baltimore City Department of Transportation; Richard Hooper, Acting Tow Manager of the Baltimore City Department of Transportation; and the Mayor and City Council of Baltimore. The complaint for replevin specifically alleged that Dehn Motor owned and operated a used car business at the address of 330-334 East Patapsco Avenue, Baltimore, Maryland and 3550-3554 Fourth Street, Baltimore, Maryland. On April 1, 2005, according to the complaint, ten to twenty Baltimore City police officers allegedly entered Dehn Motor's lots and initiated the towing of sixty-seven vehicles that Dehn Motor lawfully owned as part of the used car sales business, without a court order or warrant. The complaint further averred that the City would not return the vehicles unless Dehn Motor agreed to pay $6,600 for the cost of towing:

1. The Plaintiffs legally operate a used car business at the address of 330-334 East Patapsco Avenue, Baltimore, Maryland 21225 and 3550-3554 Fourth Street, Baltimore. Maryland 21225..[sic]
2. The Plaintiffs' location has been continuously used to sell used cars for more than fifty years.
3. The Plaintiffs' two lots are private property. 3554 Fourth Street is surrounded by a chain link fence about eight feet high with lattice sheets.
4. On or about April 1, 2005, about 10 to 20 Baltimore City police officers came to the Plaintiffs' place of business without a warrant and without a prior Court order and they, with the help of many tow trucks of the City of Baltimore, entered into the private property of the Plaintiffs' place of business and towed from the Plaintiffs' place of business about sixty-seven (67) automobiles that were lawfully owned by the Plaintiff in the operation of it's [sic] business. Attached hereto and marked Plaintiffs' Exhibit Number One is a list of the vehicles taken from the Plaintiffs' place of business and vehicle identification number of the automobiles that were illegally seized.
5. The Defendants seized about six (6) more automobiles which they did not provide a list of to the Plaintiff.
6. The Baltimore City Police officers never showed a warrant and/or a Court order to Plaintiffs and/or its agents, servants or employees, that the police had a right in fact and in law, to enter on the private property of the Plaintiff and to forcibly seize sixty-seven (67) automobiles lawfully owned

3

by the Plaintiff and lawfully stored on it's [sic] private property.

    7.  The Plaintiffs on April 1, 2005, was [sic] not served or given any citations of any alleged violation of the law concerning the sixty-seven (67) cars that the defendants illegally seized from the Plaintiffs' place of business and unjustly detains.

    8.  The Plaintiffs made an effort to recover some of it's [sic] automobiles, but they were told they could not have the automobiles they requested without paying about $6,600.00.

    9.  The Defendants do not claim title and/or ownership of the seized automobiles.

    10.  The Defendants unjustly detain the automobiles of the Plaintiffs they illegally seized from the Plaintiffs.

(emphasis in original). As a result of the alleged unlawful detention of the vehicles, Dehn Motor sought return of the cars, as well as $60,000 to cover loss of use:

    11.  The Plaintiffs believe that the automobiles illegally seized by the Defendants have a value to the Plaintiffs of about Sixty Thousand Dollars ($60,000.00) plus the damages caused to the Plaintiffs by the loss of use of it's [sic] automobiles since these automobile have been unjustly detained by the Defendants. The Plaintiffs cannot sell or prepare the seized automobile for sale while they are unjustly detained by the Defendants.

    12.  The Plaintiffs request that the sixty-seven (67) automobiles illegally seized by the Defendants be returned immediately to the Plaintiffs at the expense of the Defendants.

    13.  The Plaintiffs request damages, that are fair and reasonable, that the Plaintiffs suffered because of the illegal seizure of the sixty-seven (67) automobiles from the possession of the Plaintiffs and the illegal detention of said automobiles by the Defendants.

Subsequently, after the action was joined, District Court Judge Miriam B. Hutchins entered an order that the vehicles be returned to Dehn Motor, on the condition that they not be stored where the cars originally had been.

On March 28, 2008, almost three years after the vehicles were towed, Dehn Motor initiated another action in the Circuit Court for Baltimore City; this second action was

4

instituted against Sergeant Proctor and Officer Schultz, *inter alia*,[6] identifying them as the police officers who allegedly initiated the towing of the vehicles. The impetus for the towing occurred, according to the suit, when the Baltimore City Police Department received complaints from Brooklyn & Curtis Bay Coalition,[7] a local neighborhood improvement association, leading Officer Schultz to conduct "his own inspection and observation of the used car business". The complaint alleged that Officer Schultz, with the knowledge of his supervisor, Sergeant Proctor, planned to have the vehicles towed days prior to April 1, 2005 and, on April 1, 2005, executed that plan. Dehn Motor sought $500,000 in compensatory damages and $1,000,000 in punitive damages, alleging that the warrantless towing of the vehicles without a prior hearing violated Articles 19,[8] 24,[9] and

---

[6] Dehn Motor also sued Frederick Bealefeld, the Police Commissioner of the Baltimore City Police Department; the Mayor and City Council of Baltimore City; and Brooklyn & Curtis Bay Coalition, although claims against these parties were dismissed during the proceedings and those orders are not challenged on appeal.

[7] Officer Schultz testified in his deposition that the complaints the Police Department received regarding Dehn Motor pertained primarily to vehicles that were parked out on the street that did not contain license plates and others that were parked in a manner blocking a nearby alleyway.

[8] Article 19 of the Maryland Declaration of Rights provides:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

[9] Article 24 of the Maryland Declaration of Rights provides:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his

26[10] of the Maryland Declaration of Rights as well as Section 1983 of Title 42 of the United States Code based on violations of the Fourth[11] and Fourteenth[12] Amendments to the United States Constitution:

> 17.   The illegal seizure of the automobiles and automobile parts owned by the Plaintiffs and possessed by the Plaintiffs, violated the rights of the Plaintiffs as guaranteed by the Fourth Amendment and Fourteenth Amendment to the United States Constitution and 42 USC 1983 for which defendant police officers . . . are individually liable. . . .   The Defendant police officers . . . also violated the rights of the Plaintiffs guaranteed to them under Articles 19, 24, and 26 of the Maryland Declaration of Rights and such other articles of the Maryland Declaration of Rights as may be implicated through the course of these proceedings.

---

life, liberty or property, but by the judgment of his peers, or by the Law of the land.

[10] Article 26 of the Maryland Declaration of Rights provides:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

[11] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[12] The Fourteenth Amendment to the United States Constitution provides, in relevant part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

6

18.   That at all times described herein Police Officer Joseph A. Schultz, Jr. and Sergeant A. Proctor of the Baltimore City Police Department and the Baltimore City Police Department, who were agents, servants, and employees of the Baltimore City Police Department and the Mayor and City Council of Baltimore City acted under the color of statutes, customs and usage of the State of Maryland and the City of Baltimore. . . .

19.   As a direct and proximate result of the Defendants' conduct and actions as alleged herein, the Plaintiff had to retain counsel to file suit in the District Court of Maryland for Baltimore City to regain possession of the automobiles and the automobile parts of which they legally possess to the great and emotional upset and discomfort to Farzan Mohamed and to his great expense for attorneys fees and costs to prosecute said replevin action.

Officer Schultz and Sergeant Proctor, thereafter, generally denied the allegations and asserted, as affirmative defenses, that their "actions were privileged because the Defendant[s] w[ere] performing lawful duties as . . . member[s] of the Baltimore Police Department and [they are] entitled to and claims all common law, statutory, and qualified immunities."[13]

---

[13] Prior to either party filing an Answer, the case was removed to the United States District Court for the District of Maryland.   The case, however, was subsequently remanded to the Circuit Court for Baltimore City after United States District Court Judge Catherine C. Blake determined that the removal had been untimely.   Additionally, before Officer Schultz was served with the Complaint, Sergeant Proctor had moved to dismiss the state law claims against him, asserting, *inter alia*, that they were barred because Dehn Motor failed to file a notice of claim, as required by the Local Government Tort Claims Act.   The judge who heard the motion disagreed, reasoning that the replevin action constituted substantial compliance with the notice provision:

While I suspect I'll hear more of that discussion in a moment, as to this, the court does not find that the city has indicated where there has been substantial harm to it in its ability to in fact properly prepare the case.

The court does note, if you would please, is that under the circumstances is that the activity and circumstances of the initiation of the claim, the aggravated circumstance, if you will, as to the calling of the tow trucks and the taking of the cars, were clearly notified as to potential

7

After discovery was completed, the parties filed cross-motions for summary judgment. In its motion, Dehn Motor urged that the undisputed facts showed that Officer Schultz and Sergeant Proctor had entered private property without a warrant or court order and towed Dehn Motor's vehicles, which entitled it to judgment as a matter of law on all claims.

Officer Schultz and Sergeant Proctor disagreed and filed a joint cross-motion for summary judgment, in which they asserted that they were entitled to judgment as a matter of law because the State constitutional claims were barred by the notice provision of the Local Government Tort Claims Act. They argued, specifically, that Dehn Motor had not filed a notice of claim with Baltimore City within 180 days of the date of the towing, and, moreover, that filing the replevin action was inadequate to constitute substantial compliance, because, *inter alia*, "Proctor and Schultz were not defendants or listed as parties to the Replevin action" and because the replevin action did not put the City on notice that Dehn Motor's alleged injuries emanated from State and federal constitutional violations.

Officer Schultz and Sergeant Proctor posited that the federal constitutional claims also must fail, because the undisputed facts showed that many of the vehicles were towed

---

defendants as to what plaintiffs' actions may be, albeit if the initial - - or initial action of plaintiff was in a replevin action; that under the circumstances the court does believe that there was substantial notice given the parties and that there was substantial compliance.

Judge Evelyn Omega Cannon concluded otherwise, however, when she granted Sergeant Proctor's and Officer Schultz's joint motion for summary judgment.

8

to remedy environmental and fire hazards, and therefore, the police officers were not required to obtain a warrant because they were engaged in a "community caretaking function."[14]   In support of their assertion that the vehicles posed environmental and fire

---

[14] The "community caretaking function" was first announced by the United States Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), in which the Court opined that police officers, acting as "community caretakers", did not violate the Fourth Amendment when they searched and seized the vehicle of a Chicago police officer without probable cause who had been pulled over for drunk driving. The police conducting the search were aware that Chicago police officers were required to carry a service revolver, and thus, had searched the vehicle in an attempt to locate the revolver.   In upholding the search, the Court opined that the search was reasonable because it was "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute" and because the search was aimed at ensuring the safety of the general public, rather than uncovering evidence related to crime detection. *Cady,* 413 U.S. at 441, 447, 93 S.Ct. at 2528, 2531, 37 L.Ed.2d at 714-15.   The Court further iterated:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, **for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.**

*Id.* at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714-15 (emphasis added).   In *Wilson v. State*, 409 Md. 415, 435, 975 A.2d 877, 888 (2009), in which we embraced the community caretaking doctrine, we described its function, in part, as "as a general public welfare rule or what is sometimes known as the 'public servant' exception. When the police act to protect the public in a manner outside their normal law enforcement function, many courts have applied the doctrine to validate many warrantless searches and seizures, and in a variety of circumstances."

hazards, they attached portions of Officer Schultz's deposition in which he testified that, upon arriving at the Dehn Motor lots, there were a number of vehicles that were stored in a manner causing fluids to seep out of the cars and into the ground:

> [OFFICER SCHULTZ]: [A] lot of them were like half cars, cars with the motor sticking out, leaking fluids. They were physically - - you could see the fluids leaking out of the motors, you could see the antifreeze coming out of the radiators . . .

Officer Schultz also appended other portions of his deposition in which he stated that he was informed by a member of the "Environmental Crimes Unit"[15] that the vehicles were "supposed to be parked on a hard surface, not on a grass or dirt area."

Officer Schultz and Sergeant Proctor also specifically urged that they acted with "actual justification" for the towing because of various provisions of the Baltimore City Code. Specifically, they relied on Officer Schultz's deposition testimony in which he stated that a number of vehicles were parked in a manner that obstructed an alleyway adjacent to the Dehn Motor lot. Accordingly, the officers posited that the cars were parked in violation of Article 19, Section 50-2(a) of the Baltimore City Code, prohibiting a person from obstructing an alley[16] and Article 31, Section 6-3 of the Baltimore City Code,

---

[15] Officer Schultz did not elucidate further regarding the "Environmental Crimes Unit".

[16] Article 19, Section 50-2(a) provides:

(a) *Prohibited conduct.*

Except as specifically provided in this section, no person may in any manner obstruct any street, lane, sidewalk, footway, or alley in the City or any of their gutters.

providing that, "no vehicle shall be so parked or otherwise stopped as to prevent the free passage of other vehicles or street cars in both directions at the same time". To the joint motion also was appended Dehn Motor's "Permit Application" filed with the Baltimore City Department of Housing and Community Development that stated that 3550 Fourth Street was a "vacant" lot to be used for the "storage of licensed and unlicensed vehicles", when, in fact, according to Officer Schultz and Sergeant Proctor, 3550 Fourth Street was actually a "grass lawn which abutted a home." As a result, they argued, the vehicles were stored in violation of unspecified zoning regulations, permitting the City, pursuant to Article 31, Section 31-8(d)(2) of the Baltimore City Code,[17] to tow the vehicles. Officer Schultz and Sergeant Proctor urged, finally, that they were entitled to "qualified immunity", because, they argued, they did not violate any clearly established statutory or constitutional rights.[18]

Dehn Motor failed to file a response within the time set forth in the scheduling order

---

[17] Article 31, Section 31-8(d)(2) provides in pertinent part:

> The vehicle is deemed abandoned and may be towed or otherwise removed, as provided for vehicles found abandoned on public property, if:
> * * *
> (iii) the storage of the vehicle is in violation of the zoning laws or regulations of the City.

[18] The qualified immunity doctrine, as described by the United States Supreme Court, provides that, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

in the case. Rather, when Dehn Motor filed its opposition on the day before the motions hearing, the Circuit Court judge struck the pleading. Judge Cannon also denied Dehn Motor's motion for summary judgment, but granted Sergeant Proctor's and Officer Schultz's joint motion for summary judgment.

In granting Sergeant Proctor's and Officer Schultz's motion for summary judgment, Judge Cannon concluded that the State constitutional claims were barred by the Local Government Tort Claims Act, reasoning that the filing of the replevin action did not constitute substantial compliance with the notice requirement, because it did not put the City on notice that a claim would be filed against the police officers for money damages:[19]

> I am going to grant the defendants' motion for summary judgment for several reasons. For one, plaintiff did not comply with Section 5-304 of the Local Government Tort Claims Act. The filing of the replevin action against the City and the other individuals was not notice to anyone, certainly at all that there was a claim against these two officers, a claim for money damages.
> It just simply - - it does not work as a claim for that at all. And so there's no way that that filing of that answer, that could be working as substantial compliance.

Turning to the federal constitutional claims, the Circuit Court judge concluded that Officer Schultz and Sergeant Proctor were entitled to summary judgment because they had qualified immunity, as they were acting pursuant to various provisions of the Baltimore City Code:

> I'm not convinced that a claim has been stated. I mean what - - again, and I don't have anything that - - that addresses this from the other

---

[19] The trial court judge also determined that Dehn Motor had not shown good cause for waiver of the notice requirements of the LGTCA. The issue of good cause is not before us.

12

side.

I mean what the - - what the officers have proffered and testified, I proffered they testified. And this is the evidence now, of course, that they were acting under the provisions of the City Code. The articles that were cited of the City Code are Article 19, Section 50-11, which talks about removing cars that are obstructing the passageways of streets, lanes, or alleys, Article 31, Section 31-6 which talks about that a person can't use a city street to park, stop, store, operate a car in such a way as to obstruct or impede the free flow of traffic. Now, I think that in fairness this would not apply, because the determination by the commissioner such a vehicle is actually obstructing traffic shall be considered prima facie evidence of a violation.

I don't know if that determination - - it doesn't say a determination needs to be made in advance. But there are other sections, Article 31, Section 6-3 which talks about obstructing free passage.

And Article, I guess it's Section - - oh, same section, 50-2 which talks about it also. And this may not have been the best way to go about doing it. And also this article - - there's another one - - Article 31, Section 31-8. I mean there's all of these articles.

And again, there's nothing - - there's been no response that has addressed either one of those in any way, shape, or form to say that the Court should disregard that.

So I mean and I went through, and as far as I figured out, it's not saying that each one of them applied. But there's enough that's involved that it certainly raised it to qualified immunity, I mean to show that it was not clearly established.

She expressly declined, however, to determine that the police officers were acting as "community caretakers" that justified the warrantless seizure of the vehicles. The Circuit Court judge subsequently entered a written order in which she granted summary judgment in favor of Officer Schultz and Sergeant Proctor.[20]

---

[20] Dehn Motor, thereafter, filed a motion to alter or amend the judgment, which was denied. In its motion, Dehn Motor challenged the assertion that the police officers had "actual justification" for the towing and argued that Judge Hutchins, in a memorandum opinion in the replevin action addressing whether Dehn Motor's replevin action was barred for failure to exhaust administrative remedies, concluded that the City did not act properly pursuant to the Baltimore City Code. Accordingly, Dehn Motor argued, the issue of

Dehn Motor, thereafter, noted a timely appeal to the Court of Special Appeals, challenging the propriety of the trial court's decision to grant summary judgment. In a reported opinion, the Court of Special Appeals affirmed. *Dehn Motor Sales, LLC v. Schultz*, 212 Md. App. 374, 69 A.3d 61 (2013). The court first concluded that the filing of the replevin action did not constitute substantial compliance with the notice requirement of the Local Government Tort Claims Act, because the replevin action failed to forewarn the City that an action for unliquidated damages would follow; rather, the court opined, it suggested that Dehn Motor only sought the return of its vehicles. *Id.* at 387, 69 A.3d at 69. Likewise, the court concluded, "the replevin complaint gave no warning, expressed or implied, that the officers might be future defendants in a more substantial and thus more threatening action in an altogether different court involving constitutional claims and that the City could also face additional and substantial damage claims, far greater than those that could be advanced in a replevin action." *Id.* at 388, 69 A.3d at 69-70.

Our intermediate appellate court also concluded, with respect to the federal claims, that the Circuit Court did not err in granting summary judgment on the grounds that Sergeant Proctor and Officer Schultz were acting in accordance with the Baltimore City Code, because Dehn Motor had failed to address the argument:

> Nonetheless, at the hearing on the parties' cross-motions for summary judgment, the court asked Dehn Motor's counsel what his response was to the officers' reliance on the Baltimore City Code in their joint motion, but no response specifically addressing that query was forthcoming. In the absence of a response, the circuit court found that the officers "were acting under the

---

compliance with the Baltimore City Code should not have been re-litigated; Dehn Motor did not advance this argument on appeal.

provisions of the City Code" when they towed the vehicles in question.

The code provisions cited by the officers prohibited the obstruction of streets and alleys, authorized the towing of obstructing vehicles, and permitted the removal of vehicles stored on private property in violation of zoning laws. Given the failure of Dehn Motor to dispute the officers' claim that they acted pursuant to the Baltimore City Code, the circuit court did not err in granting summary judgment as to Dehn Motor's Fourth and Fourteenth Amendment claims.

*Id.* at 390, 69 A.3d at 71 (footnotes omitted). The intermediate appellate court reasoned, alternatively, unlike the trial court, that the police officers' actions did not violate the Fourth Amendment, because of its conclusion that Officer Schultz and Sergeant Proctor "were acting as community caretakers when they had Dehn Motor's vehicles towed. Their purpose in doing so, as the undisputed facts showed, was to safeguard the community from the immediate and significant fire and chemical hazards that the cars posed." *Id.* at 391, 69 A.3d at 71-72. The Court of Special Appeals, finally, affirmed the judgment of the Circuit Court on the grounds that the officers were entitled to qualified immunity, reasoning that, Dehn Motor had failed to cite any "cases remotely suggest[ing] that officers must obtain a warrant or court order before towing vehicles that pose a danger to the community." *Id.* at 396, 69 A.3d at 73.

We begin by addressing whether Dehn Motor's claims are barred by the notice provision of the Local Government Tort Claims Act. The Local Government Tort Claims Act, codified at Sections 5-301 to 5-304 of the Courts and Judicial Proceedings Article,[21]

---

[21] Section 5-301 of the Courts and Judicial Proceedings Article sets forth the various definitions as used in the Local Government Tort Claims Act. Section 5-302 provides, generally, that "[e]ach local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an

15

provides that a local government is liable for judgments rendered against its employees

arising from tortious acts or omissions committed without malice and within the scope of

employment, upon certain conditions.   In relevant part, the Act provides:

> (b) *When government liable.* – (1) Except as provided in subsection (c) of
> this section, a local government shall be liable for any judgment against its
> employee for damages resulting from tortious acts or omissions committed
> by the employee within the scope of employment with the local government.
>       (2) A local government may not assert governmental or sovereign
> immunity to avoid the duty to defend or indemnify an employee established
> in this subsection.

Section 5-303(b) of the Courts and Judicial Proceedings Article.

One of the necessary conditions to maintaining an action under the LGTCA is

notice.   5-304(b) of the Courts and Judicial Proceedings Article.[22]   Under Section 5-304

of the Act, a written notice detailing the time, place, and cause of the injury must be sent by

certified mail or "in person" to the appropriate person identified in Section 5-304(c) within

180 days of the alleged injury:

> (b) *Notice required.* – Except as provided in subsections (a) and (d) of this
> section, an action for unliquidated damages may not be brought against a
> local government or its employees unless the notice of the claim required by
> this section is given within 180 days after the injury.
> (c) *Manner of giving notice*. –(1) Except in Anne Arundel County,
> Baltimore County, Harford County, and Prince George's County, the notice

---

employee within the scope of employment with the local government" and elucidates various exceptions.   Section 5-303, *inter alia*, sets limits on liability, including a prohibition on a local government being liable for punitive damages.   Section 5-304 contains the notice provision.

[22] The Local Government Tort Claims Act would apply to tortious conduct allegedly committed by Baltimore City police officers.   *See, e.g.*, *Smith v. Danielczyk*, 400 Md. 98, 110-113, 928 A.2d 795, 802-03 (2007).

16

shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:
> (i) In Baltimore City, to the City Solicitor;
> (ii) In Howard County, to the County Executive; and
> (iii) In Montgomery County, to the County Executive.

(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

The notice requirement serves the purpose of apprising a local government "of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Rios v. Montgomery Cnty.,* 386 Md. 104, 126, 872 A.2d 1, 14 (2005) (internal citations and quotations omitted). Filing notice is a "condition precedent" to suit so that failure to comply with notice bars the subsequent action. *Id.* at 127, 872 A.2d at 14.[23]

The failure to precisely conform with the statutory rubric has not necessarily barred a claimant's action, however. In *Jackson v. Board of County Commissioners of Anne Arundel County*, 233 Md. 164, 195 A.2d 693 (1963), in which we interpreted a predecessor statute to Section 5-304 of the Courts and Judicial Proceedings Article, that being Section

---

[23] For claims against Baltimore City and its employees, a notice of claim must be filed with the Baltimore City Solicitor. Section 5-304(c) of the Courts and Judicial Proceedings Article.

17

18 of Article 57, Maryland Code (1957),[24] we explained the notion that "substantial compliance" with the notice requirement was adequate to enable suit against the local government to proceed.

In *Jackson*, the Petitioner, Ms. Jackson, who was an injured passenger in an automobile accident allegedly caused by a county employee operating a dump truck, through her attorney, "sent a letter by ordinary mail to the County Commissioners of Anne Arundel County", which stated the time, place and cause of her injuries, providing:

> We represent Phyllis and William A. Jackson, Jr., and their collision insurance carrier, Interstate Insurance Company, in a claim for damages against Anne Arundel County Public Works arising out of a collision occurring on January 18, 1962, at Solley Road and Powhatan Beach Road with a County Roads truck operated by Joseph Frank Havranek.
>     'Please contact us promptly or if you carry liability insurance, have your insurance carrier contact us concerning payment of our claim.'

*Id.* at 166-67, 195 A.2d at 694-95.   After summary judgment had been granted in favor of Anne Arundel County by the trial court, we reversed, rejecting the local government's argument that the claim was barred for failure to comply with the notice requirement. We observed that Anne Arundel County had actually received the letter so that the purpose of the statute was served, that being that "the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to

---

[24] Section 18 of Article 57, Maryland Code (1957) provided in relevant part:

> No action shall be maintained and no claim shall be allowed . . . for unliquidated damages for any injury or damage to person or property unless . . . written notice thereof setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented . . . to the county commissioners . . . .

ascertain the character and extent of the injury and its responsibility in connection with it." *Id.* at 167, 195 A.2d at 695. Examining what we described as the "great weight of authority" from our sister jurisdictions, we determined that "[i]f the purpose of the statute[] is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically." *Id.* at 168, 195 A.2d at 695. Accordingly, we concluded that Ms. Jackson had substantially complied with the notice requirement.

Since *Jackson*, we have had occasion to explore the parameters of the substantial compliance doctrine. In *Faulk v. Ewing*, 371 Md. 284, 808 A.2d 1262 (2002), we concluded that a claimant who had been injured in a motor vehicle accident by an employee of the Town of Easton, and thereafter, had sent a letter detailing that injury and an expectation of compensation to a private insurance company, which provided insurance to the local government, substantially complied with the notice requirement. We reasoned that the purpose of the notice requirement had been satisfied, particularly because the Town's insurer had stated that it had conducted an investigation into the cause of the injury and made an assessment of the Town's legal liability. Likewise, in *Moore v. Norouzi*, 371 Md. 154, 807 A.2d 632 (2002), we determined that a claimant who was injured while riding a Montgomery County bus substantially complied with the notice requirement when his attorney wrote and notified Montgomery County's third-party claims administrator, Trigon, of the claim. We reasoned that, due to the significant control the County exercised over Trigon, substantial compliance with the statute had been demonstrated.

19

In *Smith v. Danielczyk*, 400 Md. 98, 928 A.2d 795 (2007), the claimant filed suit against members of the Baltimore City Police Department within 180 days of the alleged injury. After the City complained it had not received a notice of claim, the claimant sent a separate written notice of claim to the City, prior to the expiration of the 180-day window for filing the notice. The police officers who had been sued moved to dismiss the complaint, alleging that the claimants had not complied with the notice requirement. The Circuit Court judge dismissed the complaint and we reversed, concluding that, because the filing of the complaint and notice both occurred within the relevant 180-day window, the City had been informed of the necessary facts to conduct a proper investigation.

Substantial compliance, however, was not found in *Ellis v. Housing Authority of Baltimore City*, 436 Md. 331, 82 A.3d 161 (2013),[25] involving a negligence claim brought against the Housing Authority of Baltimore City by one of the Petitioners, Tyairra Johnson, who had allegedly contracted lead-paint poisoning as a result of residing in housing owned and operated by the Housing Authority. Ms. Johnson's mother had orally complained to a Housing Authority property manager about chipping paint and threatened to sue the Housing Authority if the condition was not abated. The Circuit Court for Baltimore City granted summary judgment in favor of the Housing Authority, concluding that the mother's actions did not constitute substantial compliance with the notice requirement of

---

[25] In *Ellis v. Housing Authority of Baltimore City*, 436 Md. 331, 344, 82 A.3d 161, 168 (2013), we addressed two cases in one opinion—*Ellis v. Housing Authority of Baltimore City* and *Johnson v. Housing Authority of Baltimore City*. Both cases involved suits brought against the Housing Authority of Baltimore City after the Plaintiffs had contracted lead-paint poisoning. Our discussion pertains only to Johnson's case.

the Local Government Tort Claims Act. We affirmed the judgment of the Circuit Court, agreeing that the oral threat to sue the Housing Authority as a result of the chipping and peeling paint was inadequate to constitute substantial compliance. In so concluding, we reasoned that the oral threat did not indicate, implicitly or otherwise, that a lead paint action seeking compensatory damages was forthcoming, but rather, threatened only a suit more akin to a landlord-tenant action in which the only relief sought was remediation of the chipping paint:

> First, Johnson's mother threatened to sue HABC **if it did not fix the chipping paint; thus, Johnson's mother essentially advised that the threatened action against HABC would be a landlord-tenant action (in which Johnson's mother sought that HABC fix the chipping paint), not a lead paint action (in which Johnson sought damages for her alleged injury resulting from exposure to lead paint). Simply put, through her alleged oral complaint, Johnson's mother neither explicitly nor implicitly indicated that she intended to sue HABC regarding any injury.** A plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff demands that a local government fix a defect, but neither explicitly nor implicitly indicates that the plaintiff intends to sue the local government regarding an injury resulting from the defect

*Id.* at 345, 82 A.3d at 169 (emphasis added). We further iterated that a plaintiff does not provide the requisite notice "where the plaintiff simply demands that the local government fix a defect." *Id.* at 346 n.8, 82 A.3d at 169 n.8.

In *Ellis*, we relied upon the Court of Special Appeals's opinion in *Halloran v. Montgomery County Department of Public Works*, 185 Md. App. 171, 968 A.2d 1104 (2009), in which the appellant, Karen Halloran, wrote a letter to the Montgomery County Department of Public Works and Transportation, in which she detailed the date, time, and cause of her injury; stated the amount of time she missed at work; provided pictures of her

21

injured ankle; and requested that the "pavement [be] repaired immediately to make the concave area flush with the rest of the roadway." *Id.* at 178, 968 A.2d at 1109. The letter, according to the Court of Special Appeals, did not constitute substantial compliance, because "[n]owhere in the letter did Halloran state that she had a 'claim' against the County" and thus, "the County had no reason to, and did not in fact, start 'an investigation into a tort claim for damages involv[ing] . . . legal defenses, the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy.'" *Id.* at 187-88, 968 A.2d at 1114, quoting *Wilbon v. Hunsicker*, 172 Md. App. 181, 204, 913 A.2d 678, 692 (2006).

In the instant case, Dehn Motor does not contest that it had not sent a letter by certified mail to the Baltimore City Solicitor's office advising the City of its claims against Sergeant Proctor and Officer Schultz, but contends that the filing of its replevin action in District Court fulfilled the purpose of the Local Government Tort Claims Act notice requirement. Not only did the City Solicitor defend the replevin claim, Dehn Motor claims, but it further asserts that the replevin action set forth "the time, place and cause of injury", and was litigated for almost three years. Dehn Motor concludes, therefore, that the City "had ample time to do the normal investigatory work to protect its interests and those of its employees."

Officer Schultz and Sergeant Proctor, of course, disagree, because they were not named in the replevin action, and therefore, "there was no indication that Dehn Motor

would assert constitutional claims, or any claims at all, against Proctor and Schultz." They further argue that the replevin action could "neither address the manner in which property was seized, nor adjudicate complex issues of constitutional magnitude", and thus, "did not forewarn, as a notice of claim must, that an action for unliquidated damages may follow." The Circuit Court and the Court of Special Appeals both accepted this argument, concluding that the replevin complaint did not warn the City of a future suit for unliquidated damages, and moreover, did not identify Officer Schultz and Sergeant Proctor as potential parties. We agree with our sister courts that the replevin action did not act as substantial compliance, but do so on the basis that the replevin action did not forewarn the City of the constitutional claims.[26]

The replevin action filed in the District Court differed substantially from the constitutional tort claims filed against Officer Schultz and Sergeant Proctor in the Circuit Court. In a replevin action, a party seeks basically to recover specific goods and chattels to which he or she asserts an entitlement to possession. *See Wallander v. Barnes*, 341 Md. 553, 561, 671 A.2d 962, 966 (1996). "[W]hoever is entitled to possession, whatever may be his title in other respects, may maintain or defeat the action of replevin; his right to success in the action of replevin depends entirely on his right to possession." *Shorter v. Dail*, 122 Md. 101, 104 , 89 A. 329, 330 (1913).

To prevail under any claim alleging violations of Maryland constitutional rights,

---

[26] Because the Local Government Tort Claims Act does not require a claimant to identify with specificity the party who allegedly committed the tortious act in its notice, we do not rest our decision on the failure to identify Officer Schultz and Sergeant Proctor in the replevin action.

however, proof must be adduced:

1) That the defendant-officer engaged in activity that violated a right protected under the Maryland Constitution; and
2) The defendant-officer engaged in such activity with actual malice toward the plaintiff.

Paul Mark Sandler and James K. Archibald, *Pleading Causes of Action in Maryland* 538 (5th ed. 2013). Specifically, under Article 24 of the Maryland Declaration of Rights, "a plaintiff must demonstrate that he or she (1) had a protected property interest, (2) was deprived of that interest by the state, and (3) was afforded less procedure than was due." *Id.* at 533. A violation of Article 26 occurs, *inter alia*, when the state engages in an unreasonable search or seizure of a person's property. *See Liichow v. State*, 288 Md. 502, 509 n.1, 419 A.2d 1041, 1044 n.1 (1980).[27]

As we explained in *Ellis,* to substantially comply with the notice requirement, a claimant must provide some indication, either explicitly or implicitly, that a subsequent suit for unliquidated damages will follow. The replevin action did not do so. Rather, by filing a replevin complaint, Dehn Motor communicated to the City that it sought return of the vehicles and loss-of-use damages. The replevin action, thus, was much like the threat of a landlord-tenant action seeking remediation of chipping paint that we concluded was inadequate to constitute substantial compliance in *Ellis*; effectively, by filing the replevin complaint, Dehn Motor "demanded that the local government fix . . ." a problem by

---

[27] Article 19 of the Maryland Declaration of Rights does not necessarily support a private cause of action and monetary remedies. Article 19, rather, guarantees a citizen the opportunity to seek judicial redress of a wrong. *See, e.g.*, *Doe v. Doe*, 358 Md. 113, 127-28, 747 A.2d 617, 624-25 (2000).

24

returning the vehicles and making it whole through loss-of-use damages. *See Ellis*, 436 Md. at 345, 82 A.3d at 169.

Due to the narrow relief sought through the replevin action, the City had only reason to research the fact that cars had been removed and what use had been lost. It did not have any reason to investigate whether "actual malice" was in issue as well as the process afforded to Dehn Motor, all of which are crucial aspects of the constitutional tort claims asserted in the Circuit Court. In sum, as the Court of Special Appeals aptly described in *Halloran*, only asking for return of the vehicles did not put the City on notice to "start an investigation into . . . the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, . . . and litigation strategy", that would be later in issue in the second case. *Halloran*, 185 Md. App. at 187-88, 968 A.2d at 1114 (quotations and citations omitted). Accordingly, Judge Cannon correctly concluded that Dehn Motor's constitutional claims asserted in the second suit were barred for failure to comply with the notice provision of the LGTCA.[28]

Having determined that the State law claims are barred by the Local Government Tort Claims Act, we turn now to the federal constitutional claims asserted pursuant to

---

[28] Dehn Motor devotes a substantial portion of its argument as to why the City was not prejudiced by Dehn Motor's failure to file a notice of claim. We need not address the issue of prejudice because prejudice only becomes relevant if the issue being addressed is good cause for failing to file a notice of claim, which Dehn Motor is not relying upon. *See Ellis*, 436 Md. at 352 n.11, 82 A.3d at 173 n.11 (concluding that we need not address prejudice after determining that there was no substantial compliance because "[p]rejudice to a local government due to lack of notice is at issue only if a plaintiff shows good cause for the plaintiff's failure to comply with the LGTCA notice requirement").

25

Section 1983 of Title 42 of the United States Code, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Judge Cannon concluded that the officers were entitled to qualified immunity because of various provisions of the Baltimore City Code, which, she reasoned, may not have necessarily authorized the towing, but were sufficient to support such a finding. The Court of Special Appeals concluded that the federal claims were barred for three separate reasons—the community caretaking function justified the seizure of the vehicles, the Baltimore City Code authorized the towing, and the police officers did not violate any clearly established law, and therefore, were entitled to qualified immunity. We agree that Officer Schultz and Sergeant Proctor were entitled to qualified immunity and explain.[29]

---

[29] The Court of Special Appeals determined that Officer Schultz and Sergeant Proctor were entitled to judgments as a matter of law, because they were acting as "community caretakers", a ground expressly rejected by the trial judge. While the court recognized the oft-cited principle of appellate review that we generally review summary judgment only on the grounds upon which the trial court relied, the court invoked the exception that "the grant of summary judgment will be affirmed on a ground not relied upon by the circuit court if the alternative ground is one that the motions judge would have had no discretion to reject." *Dehn Motor Sales,* 212 Md. App. at 392 n.26, 69 A.3d at 72 n.26. We need not

Qualified immunity is a doctrine mired in federal law: "[m]ost public officials carry out executive and administrative functions for which they enjoy qualified immunity from personal liability for money damages." Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims and Defenses*, 338 (3d ed. 1997). The qualified immunity doctrine protects public officials from "personal monetary liability so long as their actions do not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known" and its application "turns on the objective legal reasonableness of the official's conduct." *Id.* (alteration in original) (quotation, citations and footnotes omitted).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 813, 102 S. Ct. 2727, 2736, 73 L. Ed. 2d 396, 407 (1982),[30] the United States Supreme Court determined that a former executive aide to

_____

address the community caretaker function, because of our affirmance on the circuit court judge's basis for qualified immunity.

[30] The Supreme Court in *Harlow*, apparently, revised the standard under which qualified immunity was to be analyzed:

> Prior to *Harlow v. Fitzgerald*, the civil rights claim under § 1983 had both an objective and a subjective component. The qualified immunity defense was originally a "good faith" defense, available to all public officials without absolute immunity. The common law form of qualified immunity was limited to official actions taken in subjective good faith. In *Harlow*, the United States Supreme Court announced a revised standard for the qualified immunity defense. *Harlow* eliminated the subjective element. As a result the intent of the defendant was no longer at issue. The motivation behind this change was to preserve the immunity from suit that summary judgment provides. The Court noted that "questions of subjective intent . . . rarely can be decided by summary judgment." The subjective standard therefore conflicted with the Court's statement in *Butz v. Economou* that "insubstantial claims should not proceed to trial."

President Nixon was entitled to qualified immunity, rather than absolute immunity, from constitutional *Bivens* claims[31] asserted by an employee who had been terminated by the Department of the Air Force, according to the Court. In determining that the aide was entitled to qualified immunity, the Court explained the competing interests that the qualified immunity doctrine seeks to serve. *See id.* at 813-14, 102 S Ct. at 2736, 73 L. Ed.2d at 407-08. On the one hand, civil actions may be the only recourse to vindicate violations of constitutional rights; on the other hand, such actions impose a number of burdens on government officials, including the expense of litigation and diversion of time from an official's public duties. *Id.* at 814, 102 S. Ct. at 2736, 73 L. Ed.2d at 407-08. Likewise, a civil suit may inhibit a public official from executing his or her job, because of fear of being sued:

> In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees. *Butz v. Economou, supra*, at 506, 98 S. Ct., at 2910; see *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S., at 410, 91 S. Ct., at 2011 ("For people in Bivens' shoes, it is damages or nothing"). It is this recognition that has required the denial of absolute immunity to most public officers. At the same time,

Heather Meeker, *"Clearly Established" Law in Qualified Immunity Analysis for Civil Rights Actions in the Tenth Circuit*, 35 Washburn L.J. 79, 81 (1995) (footnotes omitted).

---

[31] Section 1983 of Title 42 of the United States Code is limited to federal constitutional claims asserted against state actors. *Bivens* actions are limited to federal actors. "*Bivens*" refers to the case of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the United States Supreme Court judicially created a cause of action to redress a federal official's violation of a constitutional right. Black's Law Dictionary 191 (9th ed. 2009). Although in *Harlow*, the Plaintiff asserted a *Bivens* action against a defendant employed by the federal government, the Supreme Court has iterated on numerous occasions that "the qualified immunity analysis is identical under either cause of action." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818, 827 (1999).

however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (CA2 1949), cert. denied, 339 U.S. 949, 70 S. Ct. 803, 94 L.Ed. 1363 (1950).

*Id*. To address these competing values, the Court announced an objective legal reasonableness standard, by which an official is entitled to immunity from suit if her conduct was reasonable in light of established constitutional and statutory law; "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S. Ct. at 2738, 73 L. Ed.2d at 410.[32] Accordingly, even if a court determines that the conduct violated constitutional norms, if the unconstitutionality of the conduct was not "clearly established" at the time the official engaged in such conduct, the official is entitled to immunity from suit. *See id.* at 818, 102 S. Ct. at 2738, 73 L. Ed.2d at 410-11.

Because one of the goals of the qualified immunity defense is to limit the financial and time burdens attendant to a law suit, the Court has iterated that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" or "*immunity from suit*" itself, *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed.2d 411,

---

[32] Although applied to a presidential aide in *Harlow*, the Supreme Court has recognized that law-enforcement officers are also entitled to qualified immunity. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S.Ct. 808, 813, 172 L.Ed.2d 565, 570 (2009).

425 (1985) (emphasis in original), so that the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," such as summary judgment. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed.2d 589, 595 (1991).

The gravamen of a qualified immunity analysis is whether the government official's conduct is reasonable in light of the state of the law in existence at the time of the conduct. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 822, 172 L. Ed.2d 565, 580-81 (2009). Accordingly, when statutory law expressly authorizes the government actor's conduct, qualified immunity is generally appropriate. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218, 18 L. Ed.2d 288, 295 (1967) (noting that a police officer would be "excus[ed] from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional on its face or as applied")[33]; *accord Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) ("Reliance upon the presumptive validity of state law may be 'the paradigm' of objectively reasonable conduct that the grant of immunity was designed to protect.").

Should a government official have acted in contravention of "clearly established" statutory or constitutional rights, however, qualified immunity is not afforded. *See Mitchell*, 472 U.S. at 530, 105 S. Ct. at 2817, 86 L. Ed.2d at 428; *see*, *e.g.*, *Hope v. Pelzer*,

---

[33] Although *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967) was decided prior to *Harlow*, courts have continued to adhere to the principle that a police officer is generally entitled to qualified immunity when he or she relies on an enacted statute or ordinance. *See, e.g.*, *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991).

536 U.S. 730, 741-42, 122 S. Ct. 2508, 2516, 153 L. Ed.2d 666, 679-80 (2002) (concluding that prison guards who twice handcuffed a prisoner to a "hitching post" for disruptive conduct were not entitled to qualified immunity from claims asserted under Section 1983 alleging deprivation of Eighth Amendment rights, because of, *inter alia*, "binding Eleventh Circuit precedent, an Alabama Department of Corrections regulation, and a DOJ report informing" the prison guards "of the constitutional infirmity in the use of the hitching post.").

In the sarcomere between law expressly authorizing an act and that which would prohibit that act, the Supreme Court has, on a case-by-case basis, generally afforded qualified immunity to government officials in both Section 1983 and *Bivens* actions, because the official under scrutiny did not violate "clearly established law." In *Reichle v. Howards*, 566 U.S. __, 132 S. Ct. 2088, 2091, 182 L. Ed.2d 985, 990 (2012), for example, a mall patron, Reichle, had approached former Vice President Richard Cheney, commenting that the latter's "policies in Iraq are disgusting", and proceeded to touch the Vice President's shoulder. The Secret Service, thereafter, interrogated Reichle and transferred him to the custody of the local Sherriff's department, where he was arrested on charges of harassment, which were eventually dismissed. *Id.* at __ , 132 S. Ct. at 2092, 182 L. Ed.2d at 990. Reichle later filed a *Bivens* action against the Secret Service agents, asserting, *inter alia*, that he had been arrested in retaliation for criticizing the Vice President, in violation of his First Amendment right to free expression. *Id.* at __ , 132 S. Ct. at 2092, 182 L. Ed.2d at 990-91. The Secret Service agents asserted a qualified

31

immunity defense, contending that it was not "clearly established" that a retaliatory arrest would have violated the First Amendment. *Id.* at __, 132 S. Ct. at 2092, 182 L. Ed.2d at 991. The United States District Court denied the motion, and the United States Court of Appeals for the Tenth Circuit affirmed. *Id.* In reversing the judgment of the Tenth Circuit Court of Appeals, the Supreme Court reasoned that, the "Tenth Circuit's precedent governing retaliatory arrests was far from clear", and thus, concluded that the Secret Service agents were entitled to qualified immunity. *Reichle*, 566 U.S. at __ , 132 S. Ct. at 2095, 182 L. Ed.2d at 993.

Similarly, in *Pearson*, 555 U.S. at 227-28, 129 S. Ct. at 813, 172 L. Ed.2d at 570-71, in an undercover sting operation, police officers arrested the respondent, Alton Callahan, inside of his home and searched his home incident to arrest after he attempted to sell methamphetamine to a police informant. Callahan filed a Section 1983 action against the police officers, alleging that the warrantless entry into his home violated the Fourth Amendment. *Id.* at 228-29, 129 S. Ct. at 814, 172 L. Ed.2d at 571. The District Court granted summary judgment in favor of the officers on the basis of qualified immunity, reasoning that many other federal district and circuit courts had adopted the "consent-once-removed doctrine", which "permits a warrantless entry by police officers into a home when consent to enter has already been granted to an undercover officer or informant who has observed contraband in plain view", and thus, the District Court reasoned, the officers reasonably could have believed their conduct was lawful. *Id.* at 229, 129 S. Ct. at 814, 172 L. Ed.2d at 571-72. The United States Court of Appeals for the

Tenth Circuit reversed, concluding that it was "clearly established" that warrantless entries into the home were presumptively unreasonable. *Id.* at 230, 129 S. Ct. at 814, 172 L. Ed. 2d at 572. Reversing, the Supreme Court observed that there was a circuit split regarding the "consent-once-removed doctrine", and concluded, "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Id.* at 245, 129 S. Ct. at 823, 172 L. Ed. 2d at 581 (citation and quotation omitted).

In another Section 1983 claim alleging a violation of Fourth Amendment rights, the Supreme Court in *Wilson v. Layne*, 526 U.S. 603, 616, 119 S. Ct. 1692, 1700, 143 L. Ed.2d 818, 831 (1999) concluded that officers who had brought media members into the home of a suspect while executing a warrant had violated the Fourth Amendment, but concluded that the police officers were entitled to qualified immunity. In so doing, the Court observed that, at the time of the media ride-a-long, "there were no judicial opinions holding that this practice became unlawful when it entered a home." *Id.* Accordingly, "[g]iven such an undeveloped state of the law, the officers in this case cannot have been expected to predict the future course of constitutional law", and therefore, were entitled to qualified immunity. *Id.* at 617, 119 S. Ct. at 1701, 143 L. Ed.2d at 832 (citation and quotation omitted).

In considering just where on the spectrum of qualified immunity the government official's actions have fallen, particularly in the context of alleged Fourth Amendment violations, the Supreme Court has recognized that consideration must be given to the

33

factual circumstances the official confronted. *Anderson v. Creighton,* 483 U.S. 635, 640-41, 107 S. Ct. 3034, 3039-40, 97 L. Ed.2d 523, 531 (1987). In *Anderson,* a federal agent, Russell Anderson, conducted a warrantless search of the Creighton family home in search of a man suspected of committing a bank robbery. *Id.* at 637, 107 S. Ct. at 3037, 97 L. Ed.2d at 529. The Creightons, thereafter, filed a *Bivens* action against Anderson asserting a violation of their Fourth Amendment rights; the United States District Court dismissed the claim and the Eighth Circuit reversed, concluding that Anderson was not entitled to qualified immunity because "the right Anderson was alleged to have violated—the right of persons to be protected from warrantless searches of their home unless the searching officers have probable cause and there are exigent circumstances—was clearly established.*"* *Id.* at 637-38, 107 S. Ct. at 3038, 97 L. Ed.2d at 529. The Supreme Court reversed the Eighth Circuit, concluding that it had erred by refusing "to consider the argument that it was *not* clearly established that the circumstances with which Anderson was confronted did not constitute probable cause and exigent circumstances." *Id.* at 640-41, 107 S. Ct. at 3039, 97 L. Ed.2d at 531. Accordingly, the Court remanded the case to the Eighth Circuit and instructed the court to consider the relevant inquiry, which it deemed to be, the "objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the **information the searching officers possessed**." *Id.* at 641, 107 S. Ct. at 3040, 97 L. Ed.2d at 532 (emphasis added).

Not surprisingly, in the instant case, the parties assert that the conduct in issue falls

at different points on the qualified immunity spectrum. Officer Schultz and Sergeant Proctor not only assert that the Baltimore City Code affirmatively authorized their conduct, but they also contend that there is no clearly established law prohibiting "the seizure of vehicles when the vehicles are illegally parked and present multiple dangers to the environment and public safety." Dehn Motor disagrees, arguing that the Baltimore City Code did not authorize the towing, and instead, takes the position that pursuant to *Duncan v. State*, 281 Md. 247, 378 A.2d 1108 (1977); *Huemmer v. Mayor and City Council of Ocean City*, 632 F.2d 371 (4th Cir. 1980); and *Associates Commercial Corp. v. Wood*, 22 F. Supp. 2d 502, 504 (D. Md. 1998), "[i]t strains credulity that two police officers, presumably trained in the constitutional rights afforded under the Fourth and Fourteenth Amendment, could reasonably believe that they could simply seize and impound 67 automobiles without a court order or warrant".

Judge Cannon concluded that the Officers' actions fell in the sarcomere between law which expressly authorized the officers' conduct and that which affirmatively prohibited it. While she referenced various Baltimore City Ordinances,[34] she stated that she was not concluding that "each one of them applied." Earlier in the hearing, she also

---

[34] As discussed in greater detail, *supra*, Judge Cannon referenced Article 31, Section 6-3 of the Baltimore City Code, providing that, "[n]o vehicle shall be so parked or otherwise stopped as to prevent the free passage of other vehicles or street cars in both directions at the same time"; Article 19, Section 50-2 of the Baltimore City Code, which provides that, "no person may in any manner obstruct any street, lane, sidewalk, footway, or alley in the City or any of their gutters"; and Article 31, Section 31-8 of the Baltimore City Code, which permits the towing of vehicles deemed abandoned by operation of law when the vehicle is stored in violation of zoning regulations.

35

stated that counsel for Dehn Motor had not directed her to any law "that says that a car can't be towed without a warrant."

As the Supreme Court dictated in *Anderson*, to analyze a qualified immunity defense, we must consider the circumstances with which the officers were confronted. *Anderson*, 483 U.S. at 640-41, 107 S. Ct. at 3039, 97 L. Ed.2d at 531. Viewing the facts in a light most favorable to the non-moving party, as we must on a motion for summary judgment, *Jones v. Mid-Atl. Funding Co.*, 362 Md. 661, 667, 766 A.2d 617, 620 (2001), we note that both officers testified in their deposition that the vehicles were towed because they were illegally parked on the street and because the vehicles parked on the Dehn Motor lots posed environmental and fire hazards, as they were leaking fluids into the ground.[35]

---

[35] In its brief, Dehn Motor asserts that the officers offered these justifications only as a pretext. Pretext, however, is irrelevant in a qualified immunity analysis in which the sole inquiry is whether the officer's actions were objectively reasonable under the circumstances. In *Wullschleger v. Peters*, 28 F.Supp.2d 549 (D. Neb. 1998), Wullschleger brought a Section 1983 action against city police officers, deputy sheriffs, and state troopers who executed two search warrants of his residence, asserting that police officers violated his Fourth Amendment rights when they took property not identified by the search warrant. *Id.* at 552-53. The officers urged that they were entitled to qualified immunity, because, they argued, the items seized were seized pursuant to the "plain view doctrine." *Id.* at 558. In an attempt to defeat the qualified immunity claim, Wullschleger argued that the search warrant, which had been issued to search for allegedly stolen items in one investigation, was actually a "pretext" or a "ruse" to search for evidence in another investigation. *Id.* In rejecting this argument, the District Court Judge reasoned, *inter alia*, "an officer's subjective beliefs are not relevant to qualified immunity analysis", and therefore, "the officers' hope of finding incriminating evidence of another crime when executing the search warrant does not preclude the qualified immunity defense." *Id.* at 559; *see also, e.g.*, *Bridgewater v. Caples,* 23 F.3d 1447, 1449 (8th Cir. 1994) (reasoning that an officer was entitled to qualified immunity from Section 1983 claims asserting violations of Fourth Amendment rights under circumstances in which officer did not believe he had probable cause to make an arrest, because an officer's subjective intent is irrelevant as long as an objectively reasonable officer could have concluded that probable

Dehn Motor directs us to no judicial opinion or statute, nor have we discovered any, that would affirmatively prohibit the towing of the vehicles leaking fluids that the officers believed created fire or environmental hazards. Indeed, in *Duncan*, 281 Md. 247, 378 A.2d 1108, a case upon which Dehn Motor relies, we opined that the warrantless search and seizure of a vehicle during the course of a criminal investigation violated the Fourth Amendment, in part, because there had been no showing that the seized vehicle posed a public safety hazard. In *Duncan*, police officers engaged in a warrantless search and impoundment of a vehicle parked on the lawn of a private residence during the course of a criminal investigation. The Court of Special Appeals concluded that the police actions were reasonable, because they were acting as community caretakers. On *certiorari,* we reversed; in so doing, we reviewed the Supreme Court's jurisprudence relative to the community caretaking function and observed that "[a]ctivities concerning automobiles carried out by local police officers in the interests of public safety . . . frequently result in the automobile being taken into custody." *Id.* at 256, 378 A.2d at 1114. We nevertheless concluded that the officers' actions violated the Fourth Amendment, because, *inter alia, "*[t]he evidence is clear that the automobile was parked on private property, not on a public highway or street," and moreover, the vehicle "was not impeding traffic or threatening public safety and convenience." *Id.* at 259, 378 A.2d at 1116.[36] Our own jurisprudence,

cause existed).

[36] The remaining cases upon which Dehn Motor relies as creating "clearly established rights" are even more attenuated from the facts of the present case, and thus, unavailing. In *Huemmer v. Mayor and City Council of Ocean City*, 632 F.2d 371 (4th Cir. 1980), the

thus, supports the notion that towing vehicles from private property that would threaten public safety could be permissible, without a warrant.

Taking into consideration the circumstances about which the officers testified that they confronted and the absence of statutory and case law prohibiting their actions without a warrant when they ordered the towing of vehicles leaking fluids that they believed constituted environmental and fire hazards, we determine that the threshold for qualified immunity has been met, and they are entitled to its protection.

---

United States Court of Appeals for the Fourth Circuit determined that an ordinance providing that "'[a]ny property owner . . ., when a vehicle is illegally parked upon his private property (to) notify any authorized towing agency and request removal of said vehicle" was unconstitutional because "[n]o opportunity was presented for notice and a hearing to establish whether or not the initial removal of the vehicle was rightful or wrongful." *Huemmer*, 632 F.2d at 372 (alterations in original). Likewise, in *Associates Commercial Corp. v. Wood*, 22 F. Supp. 2d 502, 504, 506 (D. Md. 1998), the United States District Court for the District of Maryland, relying on *Huemmer*, determined that a Maryland statute permitting "any person on whose property a totally inoperable vehicle more than 8 years old has remained for more than 48 hours without the consent of the owner of the property [to] transfer the vehicle for scrap without a certificate of title or notification" was unconstitutional, because it failed to provide notice and a hearing before seizure of the vehicles. These cases, however, only addressed the seizure of vehicles when there is no threat to public health or safety.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**