*William Rounds, et al. v. Maryland-National Capital Park and Planning Commission, et al.*,
No. 19, September Term 2014, Opinion by Greene, J.

**LOCAL GOVERNMENT TORT CLAIMS ACT – NOTICE REQUIREMENT – CJP § 5-304**

Generally, the notice requirement of the Local Government Tort Claims Act (the "LGTCA") applies to constitutional and non-constitutional based claims for unliquidated damages resulting from the tortious acts or omissions by local governments or their employees committed within the scope of employment.

**JOINDER – NECESSARY PARTIES**

To excuse non-joinder of necessary parties, a plaintiff must demonstrate that (1) the non-joined party clearly had knowledge of the pending litigation, and (2) the non-joined party must have purposefully declined to join the litigation, despite the non-joined party's ability to join. In a case involving an easement dispute, adjacent landowners are necessary parties and a mere allegation by the plaintiffs that the adjacent landowners will not dispute the outcome of litigation is insufficient to excuse their participation in the lawsuit.

**STATUTE OF LIMITATIONS – DISCOVERY RULE – INQUIRY NOTICE**

In applying the discovery rule, the court's inquiry must focus on when the plaintiff discovered certain *facts* which would be sufficient to provide notice of the injury. When a statute of limitations defense is raised at the motion to dismiss stage, review is limited to the facts as alleged in the complaint. Where a plaintiff specifically alleged the date on which they became aware of their injury, such date falls within the applicable statute of limitations, and allegations of the complaint do not demonstrate the plaintiff's knowledge of facts which would provide notice of the injury at any earlier date, granting the motion to dismiss on statute of limitations grounds is improper.

**STATUTE OF LIMITATIONS – TOLLING – 28 U.S.C. § 1367**

28 U.S.C. § 1367(d) serves to toll the statute of limitations for state law claims that were initially filed in federal court, but were subsequently dismissed for lack of jurisdiction. The statute tolls only those claims that were expressly asserted in the initial federal court case. Therefore, the statute of limitations will not be tolled for a newly asserted claim in state court.

Circuit Court for Montgomery County
Case No. 350954
Argued: November 12, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 19

September Term, 2014
_____

WILLIAM ROUNDS, et al.

v.

MARYLAND-NATIONAL CAPITAL PARK
AND PLANNING COMMISSION, et al.
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
McAuliffe, John F. (Retired, Specially
Assigned),

JJ.

_____

Opinion by Greene, J.
_____

Filed: January 29, 2015

At its core, this lawsuit concerns the existence of a historic "Farm Road," the origins of which date back well over a century. While the history of Farm Road may lie in antiquity, it has become the focal point of much contention in the past decade. Indeed, Farm Road has been the subject of several lawsuits, in both the state and federal courts of Maryland,[1] an independent investigation,[2] and numerous news reports and articles.[3] The instant case, arising out of an appeal to the Court of Special Appeals, requires this Court to consider the procedural difficulties which have otherwise prevented Petitioners from reaching some resolution on the merits of their suit.

## FACTUAL AND PROCEDURAL HISTORY

### *Parties Involved*

Petitioners, William Rounds, Marvin Gaither, Clifton Lee, James Bell, Bernice

---

[1] *See Awkard v. Md.-Nat'l Capital Park & Planning Comm'n*, RWT-08-1562, 2011 WL 2896005 (D. Md. July 15, 2011); *Bacon v. Arey*, 203 Md. App. 606, 40 A.3d 435 (2012); *Nouvet v. Arey, et al.*, case no. 255120V, 2006 WL 6041009 (Md. Cir. Ct. Dec. 9, 2006) *aff'd* No. 1832 (Md. Ct. Spec. App. July 16, 2009).

[2] *See* BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC, REPORT OF INVESTIGATION FOR THE MONTGOMERY COUNTY PLANNING BOARD MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION (Dec. 5, 2013) *available at* http://www.montgomeryplanningboard.org/department/news_releases/documents/ dellabrooke_final_report.pdf. This report, authored by Douglas Bregman with the assistance of Kevin Barker, among others, provides an exceptional analysis of many of the substantive issues underlying this matter. *See id.*

[3] *See, e.g.,* Bill Turque, *Nothing Improper Found in Road Fight*, The Washington Post, Dec. 12, 2013, at B03; WUSA9, *Police Called to Sandy Spring's Farm Road* (Oct. 24, 2013) *available at* http://www.wusa9.com/story/news/local/2013/12/18/4102725/.

Martin, and Robert[4] and Michelle Awkard, filed suit in the Circuit Court for Montgomery County against Respondents, the Maryland-National Capital Park and Planning Commission (the "Commission"), Macris, Hendricks, and Glascock, P.A. ("MHG"), Douglas Riggs ("Riggs"), Warren Brown ("Brown"), Paul and Sara Arey (the "Areys"), Charles and Marilyn Mess (the "Messes"), Audrey Hill, and Milton Johnson, seeking declaratory, compensatory, statutory, and punitive relief. Petitioners request that this Court review the Circuit Court's decision, and the intermediate appellate court's judgment to affirm the dismissal of the Amended Complaint against the Respondents.

### *Factual Background*

According to their Amended Complaint, Petitioners own properties located along Farm Road and a "10 Foot Right-of-Way" (collectively the "Farm Road"), which together provide the only means of access to Petitioners' properties. The properties are located on a tract of land in Sandy Spring, Maryland, bordered roughly by Goldmine Road to the north, Brooke Road to the south, and Chandlee Mill Road to the east. Petitioners allege that Farm Road runs north and south between Goldmine Road and Brooke Road through the center of the tract.

Petitioners aver that Respondent Brown began developing the "Dellabrooke" subdivision along with "Dellabrooke Forest" (collectively the "Dellabrooke subdivisions")

---

[4] Robert Awkard passed away prior to this Court's grant of the Petition for Writ of Certiorari.

2

on the northern end of Farm Road in 1994. During this development, Brown is alleged to have eliminated Farm Road's access to Goldmine Road in the north, as well as created a "fictional" conservation easement[5] to be included in subdivision plans that were to be submitted to the Commission. In preparation of the documents for submission, Brown retained MHG to complete land surveying work. Riggs was the MHG surveyor primarily responsible for this work. Acting at the direction of Brown, Riggs is alleged to have falsely omitted Farm Road from surveying documents as well as included a "fictional" conservation easement, which resulted in the Commission's deletion of Farm Road from state property maps. These documents–namely Plat 21707 for the Dellabrooke subdivision–were approved by the Commission on August 3, 2000.

The Areys purchased a portion of the fictional easement in order to develop the property in 2003. Prior to their purchase, the Areys allegedly worked with Brown in order to eliminate Farm Road's northern access to Goldmine Road as well as eliminate Farm Road in its entirety. In doing so the Areys would increase the value of the property they subsequently purchased from Brown.

Apart from the Commission's approval of the fraudulent Dellabrooke subdivision plans, Petitioners contend that the Commission has improperly refused to issue addresses to

---

[5] Petitioners contend that Brown did not adhere to the requirements of establishing a conservation easement. The alleged purpose behind the creation of the "fictional" easement was to "increase the number of allowable subdivision lots," which would increase profits.

3

the Farm Road properties, despite having issued addresses to these properties previously.[6]

Upon learning that their addresses were no longer recognized, Petitioners made several attempts to receive recognition of their addresses.[7] Mr. Rounds visited the Commission on November 7, 2007, after having been unable to meet with a member of the Commission the previous day. The Commission, however, refused to issue Petitioners addresses noting that there were errors on a 1966 Tax Map upon which Mr. Rounds had relied. The Commission directed Mr. Rounds to the Maryland Department of Planning ("MDP") in order to have the 1966 Tax Map corrected if he sought addresses. Following the Commission's suggestion, Mr. Rounds met with the MDP, which ultimately issued a letter to the Commission on November 14, 2007, confirming that the map had been corrected "to reflect the 'Farm Road' and parcel locations." Upon returning to the Commission, Mr. Rounds, accompanied by Mr. Gaither, was once again unable to obtain addresses. While Petitioners contend the Commission originally denied Petitioners' request on November 7, 2007, citing errors in the 1966 Tax Map, the Commission "now claims that it cannot issue [] addresses because

---

[6] According to Petitioners' Brief before this Court, the Commission ultimately issued Petitioners addresses during the pendency of litigation. Pet'rs' Br. 9 n.7 ("On July 18, while the [Petitioners'] direct appeal was pending in the Court of Special Appeals, the Commission issued addresses to [Petitioners], but refused to recognize the existence of Farm Road. Despite now having addresses, the Landowners have not obtained the full relief sought in this case because the failure to recognize the existence of Farm Road has prevented them from using and enjoying their properties had the Commission maintained or provided addresses in 2007.").

[7] To be clear, only Petitioners Rounds and Gaither are noted as meeting with the Commission. Furthermore, only Rounds is noted as having requested an address.

4

[Petitioners] have not presented documentation proving their right to access their property."

As part of the Commission's allegedly "ever-changing, ad hoc" reasoning, Petitioners contend that the Commission now explains that it is unable to issue addresses as a result of the neighboring landowners' failure to agree as to the existence or location of Farm Road.

In an effort to resolve the dispute, the then acting Montgomery County Executive issued a letter to the Commission urging the Commission to recognize Farm Road.[8] The letter states, in relevant part:

> Over the past several months, I have received extensive correspondence and inquires about the Farm Road. . . . I hope that you are able to recognize the Farm Road as the private right-of-way that it seems to be and provide the property owners with their rightful recognition.

Petitioners allege that the Commission, citing to the reasons noted above, did not waver in its decision to refuse to issue Petitioners addresses.

Following their failed attempts at obtaining addresses, Petitioners determined the present suit was necessary and, in an effort to comply with the notice requirement of the Local Government Tort Claims Act ("LGTCA"), Md. Code (1987, 2013 Repl. Vol., 2014 Supp.), § 5-301 *et seq.* of the Courts & Judicial Proceedings Article ("CJP"), sent notice of

---

[8] The Amended Complaint does not indicate who contacted the County Executive. Nor does the Complaint indicate when contact was made. Rather, the Amended Complaint indicates that the County Executive, in response to inquiries he received "over the past several months," sent the Commission a letter concerning Farm Road in February of 2008. To be sure, the letter from the County Executive does not indicate who the aggrieved landowners may be, nor does it speak to any future litigation.

5

their claim on June 10, 2008 and July 21, 2008.[9]

### *Procedural Background*

On June 16, 2008, Petitioners filed suit in the United States District Court for the District of Maryland. Subsequently, Petitioners' suit was dismissed on July 15, 2011 for failure to exhaust state remedies. *Awkard v. Maryland-Nat'l Capital Park & Planning Comm'n*, RWT-08-1562, 2011 WL 2896005 (D. Md. July 15, 2011).

Petitioners filed the instant suit in the Circuit Court for Montgomery County on August 11, 2011. The Amended Complaint, filed on October 17, 2011, includes the following claims as to the Commission: Count I (substantive due process violation), Count II (procedural due process violation), Count III (regulatory taking violation), and Count IV (declaratory judgment that the Commission exceeded its authority)[10] (collectively the "state

---

[9] The June 10, 2008 letter was sent on behalf of Petitioners Robert and Michelle Awkard, Bernice Martin, James Bell, Clifton Lee, and Marvin Gaither, collectively represented by Temple Law Offices at the time. The June letter was addressed to the County Executive as well as the Commission. The July 21, 2008 letter was sent on behalf of Petitioner William Rounds, represented by McDermott Will & Emory LLP at the time. The July letter was addressed to the County Executive. We note that CJP § 5-304(c)(4) requires that notice be given "to the corporate authorities of the defendant local government." In the present case, there is no contention that the County Executive is the "corporate authority" of the Commission.

[10] Although Count IV is titled "Declaratory Judgment," Petitioners seek unliquidated damages. Petitioners did not ask the court explicitly in Count IV to declare Petitioners' rights or interests in Farm Road. Nor did Petitioners ask the court to enjoin the Commission from acting in a certain manner. To be certain, our decision in the present case does not imply that the LGTCA applies to declaratory actions; indeed, such a holding would be contrary to the language of the statute. Count IV, however, seeks compensatory, statutory, and punitive damages. Therefore, Count IV (unlike Counts V-XI which request a declaration as to
(continued...)

6

constitutional counts"). As to all Respondents, Petitioners assert Counts V-XI (declaratory judgment that Petitioners have an easement to use Farm Road) (collectively the "easement claims"). With respect to the Commission, MHG, Riggs, Brown, and the Areys, the Amended Complaint contains Count XII (wrongful interference), and Count XIII (slander of title). The Respondents moved separately to dismiss the Amended Complaint. The Circuit Court granted the motions to dismiss as follows:

(1)     Counts I-IV (the state constitutional counts), with prejudice, against the Commission for failure to give proper notice under the LGTCA;

(2)     Counts V-XI (the easement claims), without prejudice, as to the Commission, the Areys, the Messes, Hill, and Johnson, for failure to join necessary parties;

(3)     Counts V-XI (the easement claims), with prejudice, as to MHG, Riggs, and Brown, as none owned property adjacent to Farm Road and were, therefore, not interested parties; and

(4)     Counts XII and XIII, with prejudice, as to the Commission, MHG, Riggs, Brown, and the Areys, as time-barred, or alternatively, with respects to MHG and Riggs, because no duty was owed to Petitioners.[11]

On appeal, the Court of Special Appeals upheld the Circuit Court's dismissal of the

_____

[10](...continued)
Petitioners' interests in Farm Road) falls under the purview of the LGTCA.

[11] There is no indication in the Circuit Court's order as to why Counts XII and XIII were disposed of on statute of limitations grounds and not the LGTCA notice requirement grounds as against the Commission. Counts XII and XIII both seek unliquidated damages against the Commission, among others. Therefore, the LGTCA would apply to the extent those counts were brought against the Commission. Indeed, the Commission, in its motion to dismiss, requested that the state constitutional counts *and* Counts XII-XIII be dismissed as a result of Petitioners' failure to comply with the LGTCA.

action. *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 214 Md. App. 90, 75 A.3d 987 (2013). We subsequently granted Petitioners' *certiorari* request, *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 436 Md. 327, 81 A.3d 457 (2013), to answer the following questions, which we have rephrased for clarity:

> (1) Are Petitioners, in seeking redress from alleged local government violations of the state constitution, required to comply with the strict notice requirements of the LGTCA?
>
> (2) Did the Court of Special Appeals properly uphold the trial court's dismissal of Petitioners' easement claims for a failure to join necessary parties, despite Petitioners' contention that "adjacent property owners have agreed not to contest the relief sought"?
>
> (3) Did the Court of Special Appeals err in its factual determination that the Petitioners failed to file Counts XII and XIII within the Statute of Limitations?

For the reasons stated below, we answer each of the questions in the affirmative.

## DISCUSSION

### I.    Standard of Review

This Court reviews the grant of a motion to dismiss for legal correctness. *Patton v. Wells Fargo Financial Md., Inc.*, 437 Md. 83, 95, 85 A.3d 167, 173 (2014); *Heavenly Days Crematorium, LLC v. Harris, Smariga & Assocs., Inc.*, 433 Md. 558, 568, 72 A.3d 199, 204-05 (2013). As we noted previously,

> On appeal from a dismissal for failure to state a claim, we must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief

8

may be granted. We must confine our review of the universe of facts pertinent to the court's analysis of the motion to the four corners of the complaint and its incorporated supporting exhibits, if any.

*Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 193, 43 A.3d 1029, 1033 (2012) (quoting *Parks v. Alpharma, Inc.,* 421 Md. 59, 72, 25 A.3d 200, 207 (2011)).

## II. COUNTS I-IV

The intermediate appellate court upheld the Circuit Court's dismissal of Counts I-IV against the Commission on the grounds that Petitioners failed to comply with the LGTCA notice requirement, CJP § 5-304.[12] Petitioners challenge the reasoning of the courts below and argue that the LGTCA notice requirement is inapplicable to violations of the state constitution. As discussed in greater detail below, we hold that, generally, the LGTCA notice requirement applies to both state constitutional and non-constitutional tort claims for unliquidated damages.[13] Moreover, we hold that the Circuit Court was well within its

---

[12] The Court of Special Appeals limited its holding to suits brought against the Commission. *See Rounds*, 214 Md. App. at 107 n.10, 75 A.3d at 997 n.10 ("We do not decide whether the LGTCA notice requirement would apply where a plaintiff sues a *different* local government for a state constitutional tort.") (emphasis added).

[13] We note that a cause of action for damages may not lie for all violations of the state constitution. *See Dipino v. Davis*, 354 Md. 18, 50 n.7, 729 A.2d 354, 371 n.7 (1999) ("We do not mean in any way to suggest that an action for damages lies for the violation of *all* provisions of the Constitution or Declaration of Rights; it may or may not, but that is not before us in this case.") (emphasis in original). Where a cause of action for damages exists and a plaintiff seeks unliquidated damages for the "tortious acts or omissions" of a local government and/or employee acting within the scope of employment, however, the LGTCA notice requirement applies.

As in the present case, where a local government has been sued for violations of citizens' constitutional rights, under Maryland common law "there is ordinarily no local
(continued...)

9

discretion to conclude that no good cause existed to excuse Petitioners' failure to comply with the notice requirement.

At the outset, we emphasize what is not before us in the present case. Petitioners have not argued, before this Court, that they actually complied with the notice requirement of the LGTCA. Moreover, although raised in the Circuit Court below, no issue has been raised by Petitioners as to whether they have substantially complied with the notice requirement of the LGTCA. Instead, this Court is asked to resolve whether Petitioners, in bringing an action against the Commission for alleged violations of the state constitution, were required to comply with the LGTCA notice requirement. With respect to whether Petitioners have demonstrated good cause to excuse their failure to comply, we limit our review to whether the Circuit Court abused its discretion in finding that no good cause existed.

### *Statutory Scheme*

A brief overview of the LGTCA itself is appropriate. As this Court previously explained in *Ennis v. Crenca*, 322 Md. 285, 291, 587 A.2d 485, 488 (1991):

The Local Government Tort Claims Act was passed in response to a perceived

---

[13](...continued)

government immunity." *Ashton v. Brown*, 339 Md. 70, 102, 660 A.2d 447, 463 (1995) (citations omitted) and cases cited therein. As we explained in *Dipino*, "sitting atop [the principles of immunity] is [the] LGTCA." 354 Md. at 49, 729 A.2d at 370. As discussed *infra*, where a plaintiff maintains an action against a local government or its employees (i.e. where the local government has no immunity), the LGTCA affects the allocation of financial liability between the local government and its employees.

insurance crisis plaguing counties, municipalities and their employees. The legislative history of the Act reflects the General Assembly's concern for the impact of increased law suits on the incentive of public employees and officials to do their jobs to the best of their abilities.

In order to address these concerns, the LGTCA, among other things, acts to limit the designated local governments'[14] financial liability as well as to provide the employees of local governments certain protections from damages.

Where an employee of a local government is sued, the LGTCA affords the employee limited protections. First, the Act provides that "[e]ach local government shall provide for its employees a legal defense in any action that alleged damages resulting from tortious acts or omissions committed . . . within the scope of employment." CJP § 5-302(a). Second, where a plaintiff prevails on his or her claim, the LGTCA provides that "a person may not execute against an employee on a judgment rendered for tortious acts or omission committed . . . within the scope of employment [and without malice]." CJP § 5-302(b). Instead, the

---

[14] The LGTCA applies to "local governments" as defined in CJP § 5-301. While this includes governmental entities perhaps colloquially thought of as "local governments," such as Montgomery County or Prince George's County, § 5-301 also includes in its scope governmental entities such as the Commission, the Baltimore City Police Department, the Washington Suburban Sanitary Commission, and the Enoch Pratt Free Library. *See Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 322, 780 A.2d 410, 433-34 (2001) (explaining that the definition of "local government" under the LGTCA includes entities, "many of which are not local governments for purposes other than the LGTCA. (For example, the LGTCA includes among local governments the Maryland–National Capital Park and Planning Commission; the Washington Suburban Sanitary Commission; the Enoch Pratt Free Library or Board of Trustees of the Enoch Pratt Free Library; Housing Authorities created under Article 44A of the Maryland Code; the Baltimore Metropolitan Council, and the Howard County Mental Health Authority.)").

11

"local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment[.]" CJP § 5-303(b)(1). If the employee acts with malice, however, "[a]n employee shall be fully liable" and "the local government may seek indemnification for any sums it is required to pay[.]" CJP § 5-302(b). In other words, the employee would be liable for any amount in excess of the local government's liability, which is limited by CJP § 5-303. The effect of the LGTCA is to "provide a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." *Ashton v. Brown*, 339 Md. 70, 108, 660 A.2d 447, 466 (1995).

With respect to only these protections, the LGTCA makes clear that "[a] local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee[.]" CJP § 5-303(b)(2). Apart from this limited waiver of immunity, the LGTCA does not waive any preexisting immunity against suit held by the local government or its employees. *Hansen v. City of Laurel*, 420 Md. 670, 679-80 n.5, 25 A.3d 122, 128 n.5 (2011) ("First, the LGTCA does not waive the limited immunity enjoyed by local governments[.] . . . Second, the LGTCA does not waive any immunity enjoyed by 'public officials' and other similar representatives of local government against potential tort claimants.").

12

Under the LGTCA, the liability of the local government is limited and "may not exceed $200,000 per an individual claim, and $500,000 per total claims[.]" CJP § 5-303(a). This cap limits the local government's liability in both a suit brought directly against the governmental entity itself and in a suit brought against the employee, where the governmental entity must provide indemnification. *Bd. of Cnty. Comm'rs v. Marcas, L.L.C.*, 415 Md. 676, 684, 4 A.3d 946, 951 (2010) (explaining that "the General Assembly enacted . . . an emergency measure 'clarifying that the monetary limits on the liability of a local government under the [LGTCA] apply to claims against local governments when named as defendants'"). As part of the limitation on liability, CJP § 5-303(c)(1) notes that "[a] local government may not be liable for punitive damages."

Finally, the LGTCA provides the procedural prerequisites to bringing a cause of action against a local government or its employees. The LGTCA's notice requirement provides, in part, that "an action for unliquidated damages may not be brought against a local government or its employees unless [] notice of the claim . . . is given within 180 days after the injury."[15] CJP § 5-304(b)(1). The failure to give notice, however, does not operate as an absolute barrier to a plaintiff's claims provided the plaintiff shows good cause for the failure to give the required notice and the defendant has not been prejudiced by the failure. CJP § 5-304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced

---

[15] The only actions which may "be brought against a local government" are those which exist apart from the LGTCA. The LGTCA does not authorize a new cause of action; rather, it affects the liability of a local government and its employees.

13

by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."). The notice requirement applies to tort actions brought against the local government directly as well as those brought against an employee. *See Williams v. Maynard*, 359 Md. 379, 391, 754 A.2d 379, 386 (2000) ("The plain language of § 5-304 of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments.").

We note that the enactment of the LGTCA did not serve to create a cause of action against the local governments or their employees. Put simply, "[t]he only actions which can be brought directly against a local government are those authorized by law **which is separate and distinct from the LGTCA**." *Maynard*, 359 Md. at 394, 754 A.2d at 388 (emphasis added). The LGTCA does not create a cause of action against the local government. *Hansen*, 420 Md. at 682 n.7, 25 A.3d at 130 n.7 (explaining that "under the LGTCA, a plaintiff may not sue directly a local government for many kinds of alleged tort violations. A plaintiff could bring against those governments, however, claims that were available prior to the adoption of the LGTCA"); *Maynard*, 359 Md. at 394, 754 A.2d at 388; *Holloway-Johnson v. Beall*, __ Md. App. __ , 103 A.3d 720 (2014); *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 318, 780 A.2d 410, 431 (2001) ("On several occasions, the Maryland appellate courts . . . have held that the [LGTCA] neither authorizes a direct action against a local government nor waives the common law governmental immunity of an entity designated as a local government."); *Williams v. Prince George's Cnty.,* 112 Md. App. 526,

14

552, 685 A.2d 884, 897 (1996) (noting that the LGTCA "does not provide a method for directly suing the County or other local governments"). Rather, the LGTCA's enactment affects the financial liability of a defendant local government or employee in a tort action.

### *Does the LGTCA Notice Requirement Apply to State Constitutional Claims?*

In this case, the Circuit Court, as well as the Court of Special Appeals, concluded that the notice requirement of the LGTCA must be satisfied in order to bring a state constitutional claim for unliquidated damages[16] and that Petitioners' failure to comply with the LGTCA notice requirement warranted dismissal of Counts I-IV of the Amended Complaint, alleging various violations of the state constitution. Petitioners ask this Court to conclude that the LGTCA is inapplicable to claims alleging violations of the state constitution. We hold that, generally, the LGTCA may be properly applied to claims seeking redress for government violations of the state constitution where unliquidated damages are sought.[17]

---

[16] *Compare Blick v. Mercantile Trust & Deposit Co.*, 113 Md. 487, 490-91, 77 A. 844, 845 (1910) ("Unliquidated damages are such as rest in opinion only, and must be ascertained by a jury. They are damages which cannot be ascertained by computation or calculation; as, for instance, damages for not using a farm in a workmanlike manner, for not skillfully amputating a limb, for unskillfully working raw material into a finished fabric, and other cases of like character where no data are given for computation or any mode of calculation.") (citations and quotations omitted), *with Traylor v. Grafton*, 273 Md. 649, 661, 332 A.2d 651, 660 (1975) ("We have defined 'liquidated damage' as a ''specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other.''") (citations omitted).

[17] In its motion to dismiss, the Commission characterized Counts I-IV (as well as Counts XII and XIII) as causes of action for unliquidated damages. Petitioners have not argued, before any court in the instant case, that this characterization is incorrect; indeed, Petitioners appear to accept that they have elected to pursue these allegations in tort. We

(continued...)

Under CJP § 5-304, a plaintiff is required to send notice to the local government within 180 days of an injury as a condition precedent to bringing an action for unliquidated damages. "It is a longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government or its employees." *Hansen*, 420 Md. at 682, 25 A.3d at 130. *See also Prince George's Cnty. v. Longtin*, 419 Md. 450, 467, 19 A.3d 859, 869 (2011); *Rios v. Montgomery Cnty.*, 386 Md. 104, 127, 872 A.2d 1, 14 (2005); *Mitchell v. Housing Auth.*, 200 Md. App. 176, 191, 26 A.3d 1012, 1021 (2011). As we have previously stated, the purpose of the notice requirement is "to apprise a local government of its possible liability at a time when it could conduct its own investigation, i.e., while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of

---

[17](...continued)
note that the aforementioned counts do seek unliquidated damages as Petitioners simply request "compensatory, statutory, and punitive damages" with respect these counts.

We note that, although Petitioners title Count III as a "Regulatory Taking" the allegations under Count III contain a prayer for "compensatory, statutory, and punitive" relief. Therefore, this allegation is subject to the LGTCA because Count III seeks unliquidated damages for the alleged wrongful conduct of the Commission and sounds in tort. To the extent Count III could be based upon a theory of inverse condemnation, we do not wish to give the impression that a taking in the constitutional sense would implicate the provisions of the LGTCA. Indeed, we recognize that applying the LGTCA to a constitutionally based taking could conflict with a vested right to just compensation (*i.e.* where the value of plaintiff's property exceeded the cap on the local government's liability). This issue, however, is not before us. We are asked to consider whether Petitioners, in bringing a cause of action for alleged government violations of the constitution seeking unliquidated damages, were required to comply with the notice requirement of the LGTCA.

16

the injury and its responsibility in connection with it." *Longtin*, 419 Md. at 466, 19 A.3d at 869 (citation omitted). *See also Maynard*, 359 Md. at 389-90, 754 A.2d at 385 (quoting *Bartens v. Mayor & City Council of Balt.*, 293 Md. 620, 626, 446 A.2d 1136, 1138-39 (1982)) (explaining that the purpose of the notice requirement of the predecessor to the LGTCA was "to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation").

Nothing in the statute's language or its legislative history indicates that the General Assembly intended to exclude any category of tortious conduct committed by a local government or its employees, from the scope of the LGTCA notice requirement. As we have previously indicated, "[t]his Court has been most reluctant to recognize exceptions in a statute when there is no basis for the exceptions in the statutory language." *Lee v. Cline*, 384 Md. 245, 256, 863 A.2d 297, 304 (2004). Our conclusion that the notice requirement ordinarily applies to state constitutional claims for damages is amply supported by our caselaw. *See Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 96 A.3d 221 (2014) (upholding trial court's grant of summary judgment in favor of defendants on plaintiff's state constitutional tort claims for failure to comply with LGTCA notice requirements); *Hansen*, 420 Md. at 682 n.7, 25 A.3d at 130 n.7 ("Whether the [notice] requirement applies to constitutional claims, which plaintiffs may bring directly against local governments, remains

17

uncertain. We have intimated as much, however."); *Longtin*, 419 Md. at 521, 19 A.3d at 902 (2011) (Harrell, J., concurring and dissenting in part) ("[W]e recognize, at least implicitly, that the LGTCA procedural requirements (e.g., notice) apply also to constitutional tort claims."); *Maynard*, 359 Md. at 391, 754 A.2d at 386 ("The plain language of § 5-304 of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments[.]"); *Ashton*, 339 Md. at 108 n.19, 660 A.2d at 466 n.19 ("Nevertheless, there is no exception in the [LGTCA] for constitutional torts. In fact, there is no exception in the statutory language for any category of tort."); *Thomas v. City of Annapolis*, 113 Md. App. 440, 458, 688 A.2d 448, 457 (1997) ("The statute does not distinguish between intentional and unintentional or constitutional and nonconstitutional torts[.]").

We most recently upheld the application of the notice requirement to state constitutional claims in *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 96 A.3d 221 (2014). In *Dehn Motor Sales*, the plaintiff, Dehn, filed claims against two police officers of the Baltimore City Police Department, among others, alleging state constitutional violations arising out of the towing of vehicles from Dehn's property. 439 Md. at 468-69, 96 A.3d at 226-27. After the completion of discovery, the officers moved for summary judgment arguing, in part, that the plaintiff failed to comply with the notice requirement of the LGTCA. *Dehn Motor Sales*, 439 Md. at 472, 96 A.3d at 228. The trial court granted the officers' motion "conclud[ing] that the State constitutional claims were barred by the

[LGTCA]." *Dehn Motor Sales*, 439 Md. at 475, 96 A.3d at 230. On appeal, this Court was asked to consider whether the plaintiff had substantially complied with the notice requirement. By affirming the trial court's determination that the plaintiff had not demonstrated substantial compliance, this Court implicitly concluded that the notice requirement was properly applied to the plaintiff's state constitutional claims. *Dehn Motor Sales*, 439 Md. at 487, 96 A.3d at 238. Having found no indication in the plain language of the statute or in our caselaw that the notice requirement is inapplicable to actions alleging violations of the state constitution, we decline to restrict the statute in the manner suggested by Petitioners.

### *Good Cause to Excuse Compliance with the LGTCA Notice Provision*

The Circuit Court did not abuse its discretion in concluding that Petitioners failed to demonstrate good cause to excuse their failure to comply timely and fully with the notice requirement. As discussed above, an action may proceed despite a failure to comply strictly with the LGTCA notice requirement where the plaintiff has substantially complied with or, alternatively, demonstrates good cause to excuse the failure to comply with the notice requirement. *Housing Auth. v. Woodland*, 438 Md. 415, 428-30, 92 A.3d 379, 386-88 (2014); *Longtin*, 419 Md. at 467, 19 A.3d at 869. Petitioners do not dispute that notice was given outside of the 180-day period proscribed by the LGTCA, nor do they argue substantial compliance with the notice requirement before this Court. Rather, Petitioners aver that the Circuit Court and the Court of Special Appeals have improperly concluded that Petitioners

19

failed to show good cause. As explained below, we affirm the Circuit Court and the Court of Special Appeals's judgment to dismiss Counts I, II, III, and IV against the Commission.

Where a plaintiff fails to comply with the notice requirement, it is the plaintiff's burden to demonstrate "good cause." If the local government defendant is unable to "affirmatively show that its defense has been prejudiced by lack of required notice . . . the court may entertain the suit even though the required notice was not given." CJP § 5-304. As we explained in *Heron v. Strader*, 361 Md. 258, 271, 761 A.2d 56, 63 (2000), "[t]he test for whether good cause exists . . . is 'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" (citations omitted). Moreover, "[t]his 'good cause' exception leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result." *Longtin*, 419 Md. at 467, 19 A.3d at 869-70. Cognizant of this discretionary authority, we confine our review to determining whether the trial court abused its discretion in making its good cause determination. *Woodland*, 438 Md. at 434-35, 92 A.3d at 390.

After conducting a hearing, the Circuit Court concluded as a matter of law that Petitioners failed to present any evidence establishing good cause. This judgment was upheld by the Court of Special Appeals. In affirming the judgment of the Circuit Court, the intermediate appellate court "reject[ed] [Petitioners'] contention that they prosecuted their claims with the degree of diligence that an ordinarily prudent person would have exercised

20

under the same or similar circumstances." *Rounds*, 214 Md. App. at 107, 75 A.3d at 997. The Court of Special Appeals pointed out that, according to the Amended Complaint, Petitioners took no action between November 2007–the date Petitioners allege they became aware of the Commission's wrongful acts–and June 2008–the date Petitioners sent the first notice letter–apart from apparently contacting the County Executive, who wrote a letter urging the Commission to issue addresses for Farm Road. *Rounds*, 214 Md. App. at 107-08, 75 A.3d at 997. The intermediate appellate court concluded that "persuading one officeholder to write one letter–and taking no further action [in a seven-month span]–does not amount to the degree of diligence that an ordinarily prudent person would have exercised." *Rounds*, 214 Md. App. at 108, 75 A.3d at 997. Moreover, the Court of Special Appeals rejected any notion that the delay in sending notice was caused by the Commission's allegedly misleading representations. *Id.* Petitioners failed to explain how this contributed to a delay *after* they became aware of the alleged misconduct.

Petitioners challenge the reasoning of the courts below and conclude that they "clearly provided proof of a good cause waiver." In support of their position, Petitioners argue that the Commission has not been prejudiced by their failure to send timely notice. Petitioners also contend that they sought "non-adversarial remedies" pointing to the involvement of the County Executive.

On the basis of the record before us, we are unable to conclude that the Circuit Court abused its discretion. Similar to the Court of Special Appeals, we are unable to conclude that

21

the sole act of some unidentified person soliciting the assistance of the County Executive in the span of time between the alleged injury date (November 2007) and the notice dates (June 10, 2008 and July 21, 2008) unequivocally constitutes good cause. Petitioners present no reason for the delay in sending notice after learning of the injury. In other words, it was not unreasonable for the trial court to have concluded that this conduct fails to amount to good cause. Therefore, having found no abuse of discretion, we shall not disturb the trial court's determination.

## III.    COUNTS V – XI

In Counts V–XI of the Amended Complaint, Petitioners seek a declaratory judgment that they have an easement with respect to Farm Road against all named defendants: the Commission, Brown, MHG, Riggs, the Areys, the Messes, Hill, and Johnson. The Amended Complaint also includes the assertion that not every person owning property adjacent to Farm Road had been joined; however, Petitioners assert that the "other adjacent property owners have agreed not to contest the relief sought herein." The Circuit Court dismissed Counts V–XI without prejudice for failure to join necessary parties.[18] The Court of Special Appeals affirmed, because "the record leaves unclear **who** is directly interested in the case, much less whether the directly interested people **know** of the case." *Rounds*, 214 Md. App. at 112, 75 A.3d at 1000 (emphasis in original). We agree.

---

[18] The Circuit Court dismissed Counts V-XI *with* prejudice as to Brown, MHG and Riggs, however, because those defendants do not have any property interest in the subject areas and, therefore, are not interested parties.

The Court of Special Appeals offered three reasons for its conclusion: (1) Petitioners failed to name the other interested property owners; (2) Petitioners failed to specify the number of other property owners; and (3) Petitioners attempted to waive the presence of other property owners by alleging that they would not contest the relief sought, which Petitioners cannot themselves do. *Rounds*, 214 Md. App. at 111-12, 75 A.3d at 999-1000 (quoting *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 402, 919 A.2d 738, 744 (2007)) ("The failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties."). The intermediate appellate court also rejected Petitioners' argument that the court should merely accept their allegation that others "agreed not to contest the relief sought" to mean that they knew about the lawsuit and specifically declined to participate, which would satisfy an exception to compulsory joinder that we announced in *City of Bowie v. MIE Props., Inc.*, 398 Md. 657, 703-04, 922 A.2d 509, 537 (2007).

### *Joinder*

Counts V–XI were brought under the Declaratory Judgment Act, CJP § 3-405(a), which provides that "[i]f declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party." Md. Rule 2-211 further provides that:

> Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence (1) complete relief cannot be accorded among those already parties, or (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons

already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

We have long held that the "general rule [is] that ordinarily, in an action for a declaratory judgment, all persons interested in the declaration are necessary parties." *Williams v. Moore*, 215 Md. 181, 185, 137 A.2d 193, 196 (1957). Similar to this case, *Williams* involved a declaratory judgment action regarding an easement. In that case, at least two other property owners had an interest in the purported easement, because their properties abutted the easement, but were not named in the suit. This Court held that without all adjacent property owners (who could be affected by the declaratory judgment regarding the easement), the case had to be dismissed. *Williams*, 215 Md. at 186, 137 A.2d at 197. In other words, the failure to join necessary parties was "fatal." *Id.*

We have recognized an exception to the joinder requirement, relevant here. "'[P]ersons who are directly interested in a suit, and have knowledge of its pendency, and refuse or neglect to appear and avail themselves of their rights, are concluded by the proceedings as effectually as if they were named in the record.'" *MIE Properties, Inc.*, 398 Md. at 703, 922 A.2d at 537 (quoting *Bodnar v. Brinsfield,* 60 Md. App. 524, 532, 483 A.2d 1290, 1295 (1984)). In *MIE Properties*, we stated further that "we identify as the controlling principles the non-joined party's *knowledge* of the litigation affecting its interest and its ability to join that litigation, but failure to do so." 398 Md. at 704, 922 A.2d at 537 (emphasis in original). Therefore, to excuse non-joinder of necessary parties, Petitioners must demonstrate, without resorting to self-serving hearsay declarations, that (1) the non-

24

joined party clearly had knowledge of the pending litigation, and (2) the non-joined party must have purposefully declined to join the litigation, despite the party's ability to join. Petitioners in this case have not demonstrated sufficient facts to excuse the participation of the "other adjacent property owners."

Petitioners would have us conclude that their statement in the Amended Complaint, that "other adjacent property owners have agreed not to contest the relief sought herein," is sufficient to demonstrate that the "other adjacent property owners" had express knowledge of the litigation as well as the ability to join the suit and failure to do so. We decline to do so. Petitioners' conclusory statement implying knowledge of all interested landowners is grossly insufficient. As stated by COSA, "[i]n ruling on a motion to dismiss, although a court assumes the truth of a complaint's factual allegations, the court (1) does not consider 'bald assertions [or] conclusory statements[,]' *Forster* [*v. State*], 426 Md. [565,] 604, 45 A.3d 180[, 203 (2012)] (citation omitted); and (2) construes against the plaintiff '[a]ny . . . uncertainty in the [complaint's factual] allegations[.]' *Shenker* [*v. Laureate Educ., Inc.*], 411 Md. [317,] 335, 983 A.2d 408[, 418 (2009)]." *Rounds*, 214 Md. App. at 111-12, 75 A.3d at 1000. Moreover, we agree with the Court of Special Appeals's view that Petitioners failed to provide names or even the number of additional landowners who would be potentially affected by a declaratory judgment regarding an easement over Farm Road. In this case, Petitioners clearly failed to establish that the non-joined parties met the *MIE* exception.

25

Because Counts V–XI were dismissed without prejudice, a remand of Counts V–XI to allow Petitioners to join the necessary adjacent landowners is proper.

## IV. COUNTS XII AND XIII

Petitioners assert Counts XII ("wrongful interference with easement rights") and XIII ("slander of title") of their Amended Complaint against the Commission, MHG, Riggs, Brown, and the Areys. On Respondents' motions, the Circuit Court dismissed Counts XII and XIII, and the Court of Special Appeals affirmed that judgment, on the grounds that the causes of action were time-barred pursuant to CJP § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.") and CJP § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."), respectively. For the reasons we shall explain further in this opinion, we affirm, but for different reasons, the Court of Special Appeals's conclusion that dismissal was proper as to Count XII. We shall reverse the Court of Special Appeals's judgment as to Count XIII, however, and conclude that dismissal of that count was premature at this stage of the litigation.

### *Relevant Lower Court Proceedings*

Petitioners' Count XII alleges "wrongful interference with easement rights" against the Commission, MHG, Riggs, Brown, and the Areys. Petitioners specifically allege that they "have and enjoy an easement with respect to Farm Road and the 10 Foot Right-of-Way[,

and that Respondents] intentionally and purposefully obstructed [Petitioners'] easement and interfered with their reasonable enjoyment of their easement rights." It is undisputed that Brown and the Areys owned and developed properties to the north of Petitioners' properties, and that at some point during the development of the Dellabrooke subdivisions, "northern access" to Farm Road was eliminated. Accordingly, we can deduce that Count XII arises out of the elimination of Petitioners' alleged easement on the northern side of Petitioners' properties.

Count XIII alleges "slander of title" against the Commission, MHG, Riggs, Brown, and the Areys. In Count XIII, Petitioners allege that "[Respondents] deliberately ignored public records referring to Farm Road and the 10 Foot Right-of-Way, and intentionally omitted references to Farm Road and the 10 Foot Right-of-Way in creating development documents and submitting those documents to the Commission[,]" which were subsequently improperly approved by the Commission. By submitting false documents, Petitioners allege, Respondents "falsely stated and/or agreed to the intentional false publication of, or knowingly facilitated the false publication of, the title history of the land for the area covering Farm Road and the 10 Foot Right-of-Way." In addition, Petitioners allege that, by knowingly approving the false documents, the Commission "falsely stated the title history of the land for the area covering Farm Road and the 10 Foot Right-of-Way and, in doing so, maliciously published false words." Thus, like Count XII, Count XIII arises out of the

27

activities surrounding the development and elimination of the alleged easement to the north of Petitioners' properties.

In their preliminary motions to dismiss pursuant to Md. Rule 2-322, Respondents contend that Counts XII and XIII should be dismissed on statute of limitations grounds, because, where Petitioners admitted that "access to Goldmine Road was cut off either in 1994 or 2000[,]" and "[i]f [Petitioners] relied on the alleged Farm Road as the sole means of northward access to Gold Mine Road, then they would have clearly known of an injury upon any attempt to go north on Farm Road through the Dellabrooke subdivision." The Circuit Court granted the motion, concluding that Petitioners "were on inquiry notice, at the very least, of the alleged harm because the conservation easement was approved by the Commission in 1994 and then Plat 21707 was approved by the Commission August 3, 2000. Furthermore, [Petitioners] in their Amended Complaint state that northern access to Farm Road was eliminated in 1994, inferring that [Petitioners] may have possessed more than just inquiry notice."

The Court of Special Appeals affirmed, agreeing with the trial court that Petitioners had at least "inquiry notice" of their claims by 2003 at the latest, and, therefore, the June 2008 filing in federal court was untimely. *Rounds*, 214 Md. App. at 115-17, 75 A.3d at 1002-03. Noting that Petitioners "[did] not allege the date on which Brown allegedly 'eliminated the northern access to Farm Road,'" the court determined that "the Amended Complaint implies that Brown's alleged elimination of northern access to Farm Road

28

occurred sometime in or before 2003." *Rounds*, 214 Md. App. at 115, 75 A.3d at 1002.

Based on that determination, the court therefore "assume[d] that Brown's alleged elimination

of northern access to Farm Road occurred sometime in or before 2003 (when the Areys

allegedly bought the 69 acres)." *Rounds*, 214 Md. App. at 116, 75 A.3d at 1002.

In conducting its statute of limitations analysis, the Court of Special Appeals relied

in part on its prior opinion in *Bacon v. Arey*, 203 Md. App. 606, 40 A.3d 435 (2007), which

involved the same original property and basic facts regarding the development of

Dellabrooke and the alleged elimination of Farm Road. In that case, Bacon, the appellant

landowner, brought suit on June 9, 2006 against the Commission, the development group,

and other property owners asserting his entitlement to an easement over Farm Road, which

he alleged ran across property he purchased on October 1, 2002. *Bacon*, 203 Md. App. at

618, 40 A.3d at 442-43. Bacon "alleged that Farm Road's access to Gold Mine Road 'was

permanently cut' in 1994, with the initial approval of Brown's subdivisions, and that

northward access of Farm Road to Gold Mine Road was prohibited, in 2001, with approval

of the Dellabrooke subdivisions and the 'recordation of Plat 21707.'" *Bacon*, 203 Md. App.

at 619, 40 A.3d at 443. The Circuit Court for Montgomery County dismissed Bacon's

claims, in part, as time-barred. The Court of Special Appeals held that, based on the above

allegations, Bacon "had knowledge of facts sufficient to constitute, at least, inquiry notice"

and that by making such allegations, Bacon "acknowledged that he 'reasonably should have

known' or with diligent investigation could have known at the time he purchased the property

29

that he could not use Farm Road to access Gold Mine Road." *Bacon*, 203 Md. App. at 660-61, 40 A.3d at 468. Therefore, the Court of Special Appeals concluded that his claim accrued when he took title to the property on October 1, 2002. *Bacon*, 203 Md. App. at 663, 40 A.3d at 469.

As in *Bacon*, the Court of Special Appeals in the instant case concluded that the alleged elimination of Farm Road provided Petitioners with "inquiry notice that their ability to access Farm road was in danger." *Rounds*, 214 Md. App. at 116, 75 A.3d at 1002. In the alternative, the court concluded that Petitioners were placed on inquiry notice when the Commission approved Plat 21707 on August 3, 2000. *Rounds*, 214 Md. App. at 116-17, 75 A.3d at 1002. The court noted, however, that the *Bacon* decision "depended on the fact that—independent of what was in the plaintiff's chain of title—the plaintiff was on inquiry notice because of the alleged elimination of northern access to Farm Road." *Rounds*, 214 Md. App. at 116 n.17, 75 A.3d at 1002 n.17. Therefore, the court concluded, "after Brown's alleged elimination of northern access to Farm Road—as well as the Commission's approval of Plat 21707—[Petitioners] should have discovered their injury through the exercise of due diligence." *Rounds*, 214 Md. App. at 116-17, 75 A.3d at 1003 (citation and quotation omitted). In other words, the Court of Special Appeals's conclusion relied on inferences or assumptions that Petitioners had knowledge of facts that should have put them on inquiry notice. For the reasons explained below, we shall conclude that such inferences and

30

conclusions were not clear from the allegations of fact on the face of the Amended Complaint.

***Parties' Contentions***

Petitioners ultimately rely on the discovery rule to contend that they did not discover, and had no reason to know of, their injury until the denial of addresses by the Commission in November 2007. Specifically, Petitioners insist that it was not until the Commission denied their request for addresses that "it came to light that [Respondents], working together, effectively erased Farm Road and its ten-foot right-of-way from the books, providing the Commission with an unfounded justification to deny [Petitioners] residential addresses." In other words, Petitioners maintain that their claims accrued in November 2007. Respondents argue that Petitioners had at least inquiry notice, if not actual notice, of any possible claim by 2003 at the latest, based not on chain-of-title notice but "by virtue of the open development of Dellabrooke since 1994" and the undisputed elimination of northern access to Farm Road. Respondents MHG and Riggs note that the Court of Special Appeals in *Bacon* looked at the "totality of the facts, including the development of Dellabrooke, undisputed obstruction of the road, recording of the initial plat in 1994 and the recording of Record Plat 21707 [in] 2001." Like in *Bacon*, Respondents contend, all of those facts as alleged by Petitioners in this case, when taken together, demonstrate sufficient notice that any right to use Farm Road was being challenged at some point prior to 2003.

***Statute of Limitations***

For any statute of limitations analysis, the operative date is the date that a claim accrues. Generally, a claim accrues when the plaintiff suffers the actionable harm. The "discovery rule" is an exception to this general rule, and operates to "toll[] the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011) (quotation omitted). Simply put, the discovery rule provides that a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981) (holding the discovery rule to be generally applicable). For purposes of the discovery rule, depending on the circumstances, "inquiry notice" is sufficient to trigger the statute of limitations. "[I]nquiry notice 'means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action].'" *Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 562, 971 A.2d 214, 228 (2009) (quoting *O'Hara v. Kovens,* 305 Md. 280, 302, 503 A.2d 1313, 1324 (1986)). In other words, under the discovery rule, "notice of facts . . . is the trigger for commencement of the limitations period." *Halle Dev., Inc.*, 305 Md. at 565, 971 A.2d at 229. Thus, unlike the general rule, which depends on when the injury *occurred*,

32

when we apply the discovery rule, the focus is on when the plaintiff *discovered facts* which

provide notice of the injury.[19]

In this case, Respondents raised the statute of limitations defense in a preliminary

motion to dismiss pursuant to Md. Rule 2-322. It is well settled that "a motion to dismiss

ordinarily should not be granted by a trial court based on the assertion that the cause of action

is barred by the statute of limitations unless it is clear from the facts and allegations on the

face of the complaint that the statute of limitations has run." *Litz v. Maryland Dep't of the*

*Environment*, 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013). *See also Antigua Condo. Ass'n*

*v. Melba Investors Atl., Inc.*, 307 Md. 700, 711 n.5, 517 A.2d 75, 80 n.5 (1986) (noting that

"if correct, the defense of limitations clearly appeared from the face of the complaint and the

defense could properly be raised by a motion to dismiss under Md. Rule 2–322(b)."); *Desser*

*v. Woods*, 266 Md. 696, 703, 296 A.2d 586, 591 (1972) ("It is well settled that the defenses

of the bar of the statute of limitations and of laches may only be availed of by demurrer to

a bill of complaint when they appear on the face of the bill of complaint, itself, and other

matters not so appearing cannot be considered in determining whether or not these defenses

are a bar to the alleged cause of action."). Accordingly, our review is limited "to the universe

---

[19] Essentially, the Court of Special Appeals concluded in this case that Petitioners were on "inquiry notice" of their claims at the time that northern access to Farm Road was allegedly eliminated (*i.e.*, sometime between 1994 and 2003). In reaching this conclusion, the intermediate appellate court did not rely on or specify any facts or allegations relating to when Petitioners *knew* that northen access to Farm Road had been eliminated, or knew of facts which would cause a reasonable person to conduct further investigation, which would have revealed the elimination of northern access to Farm Road. Rather, the Court of Special Appeals focused on when Petitioners alleged that the elimination (the injury) *occurred*.

of the facts and allegations contained in [the Amended Complaint]" and all reasonable inferences drawn in the light most favorable to Petitioners. *Litz*, 434 Md. at 642, 76 A.3d at1087.

The allegations relevant to Counts XII and XIII contained in Petitioners' Amended Complaint read as follows:

1. Farm Road runs in a north-south direction through the center of the Gilpin Tract. It begins at Goldmine Road to the north and runs south to Brooke Road.

2. Use of Farm Road continued until such time as residents were openly discouraged and then prevented from traversing the northern portion of Farm Road that traversed the Dellabrooke property.

3. [Plaintiffs'] Properties sit directly along Farm Road, which has provided the only means of ingress and egress to those properties for more than one hundred years.

4. "In or around 1994, Defendant Brown, a real estate developer, began developing the area around Farm Road into subdivisions of luxury, single-family homes. . . . Development and sale of lots as the subdivision continued through the late 1990s and 2000s."

5. "As part of his development efforts, Brown eliminated the northern access to Farm Road from Goldmine Road. In addition, Brown created a fictional "conservation easement" . . . and included it in subdivision plans submitted to the Commission."

6. "Plat 21707 which the Commission approved on August 3, 2000, falsely omits any reference to Farm Road or to the 10 Foot Right-of-Way. Moreover, Plat 21707 includes the fictional 'conservation easement' over parts of Farm Road."

7. "In or around 2003, the Areys purchased 69 acres of the fictional 'conservation easement' . . . from Brown for purposes of developing the property."

34

8. "On information and belief, defendants the Areys, even before their purchase of the 69 acres, worked behind the scenes with Brown to develop 'Dellabrooke' and 'Dellabrook Forest,' to cut off the northern access to Farm Road, and to eliminate Farm Road entirely[.]"

9. "Brown, the Areys and MHG were able to take advantage of the dense forest surround [sic] the northern part of Farm Road to keep Plaintiffs from knowing about their elimination of Farm Road."

10. "As a result of the Commission's knowingly wrongful approval of Brown's, MHG's and Riggs's false submissions, (1) the 'Dellabrooke' subdivision was built over the northern entrance to Farm Road, severing the road's access point from Goldmine Road, and (2) a fictional conservation easement was recorded in the Commission's records that overlay parts of Farm Road, further severing the Plaintiffs' access to Goldmine Road."

11. "Only upon [Mr. Rounds'] November 2007 attempts to obtain addresses from the Commission did Plaintiffs learn of Defendants' wrongful acts."

Absent from these factual allegations is the date on which Petitioners became aware of the elimination of northern access to Farm Road.[20]  Indeed, Petitioners claimed that they did not become aware of their injury or "[Respondents'] wrongful acts" until 2007.  In addition, we note that the allegations do not describe how the alleged elimination of Farm Road occurred (much less whether the elimination involved any physical barrier that was in plain view of Petitioners, which might have put them on notice of their injury).  Likewise, there is no allegation regarding any notice to Petitioners regarding the Commission's

---

[20]  One would normally expect this issue to be explored if a motion for summary judgment were filed and considered.  In this case, however, the issues are raised by a motion to dismiss and thus our review is limited to the four corners of the Amended Complaint and any reasonable and permissible inferences drawn from the allegations in a light most favorable to the non-moving party.

35

recording of Plat 21707.[21]  What is clear is that the allegations contained in the Amended

Complaint, to which our review is limited, do *not* include any facts *known* by Petitioners,

prior to 2007, which would have put them on notice, inquiry or otherwise, of their claims

relating to the elimination of northern access to Farm Road.

"We have held consistently that 'the question of accrual in § 5-101 is left to judicial

determination,' unless the determination rests on the resolution of disputed facts regarding

discovery of the wrong."  *Poole*, 423 Md. at 131, 31 A.2d at 236 (quoting *Frederick Rd. Ltd.*

*P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000)).  Accordingly, where

it is unclear from the facts and allegations on the face of the Amended Complaint *what*

Petitioners knew and *when* they knew it, the question of accrual rests on a determination of

fact.  This is a question appropriate for the fact finder, not the appellate court.  *See Litz*, 434

Md. at 641, 76 A.3d at 1086 ("When it is necessary to make a factual determination to

identify the date of accrual, however, those factual determinations are generally made by the

trier of fact, and not decided by the court as a matter of law.").  Based on our review of the

---

[21] We also reject the Court of Special Appeals's alternative conclusion that "the Commission's approval of Plat 21707 on August 3, 2000, put [Petitioners] on inquiry notice that their ability to access Farm Road was in danger." *Rounds*, 214 Md. App. at 116, 75 A.3d at 1002.  Although the Court of Special Appeals did not explain under what theory the recording of Plat 21707 would provide notice to Petitioners, we point out for sake of completeness that "constructive notice from the land records, in and of itself, does not constitute the requisite knowledge of circumstances which ought to have put the plaintiff on inquiry." *Poffenberger v. Risser*, 290 Md. 631, 638, 431 A.2d 677, 681 (1981) (Rodowsky, J., concurring).  Moreover, we reiterate our conclusion in *Poffenberger* that "the discovery rule contemplates actual knowledge – that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry[.]"  290 Md. at 637, 431 A.2d at 681 (majority opinion).

Amended Complaint, we conclude that Petitioners alleged facts sufficient to survive a preliminary motion to dismiss on limitations grounds. Therefore, dismissal was premature.

### 28 U.S.C. § 1367(d)

The Circuit Court also concluded that, even if the date of accrual was not until November 2007, Count XII ("wrongful elimination of easement rights") was time-barred in any event because Count XII was not included in the initial federal court case. Rather, Count XII was first made a part of the state court complaint filed in 2011, more than three years after the latest possible accrual date. The Circuit Court declined to accept Petitioners' argument that Count XII would relate back to the initial filing in federal court because, although it was a different legal theory, it arose out of the same facts. Although the Court of Special Appeals did not address this question, because it held that both claims were time-barred based on the date of accrual, when the trial court gives an alternate ground for a conclusion, it is reasonable for the appellate court to review it for legal correctness. *See Bailiff v. Woolman*, 169 Md. App. 646, 653, 906 A.2d 409, 414 (2006) ("We still must satisfy ourselves . . . that the alternative holding is indeed the one that . . . would legally constitute a freestanding basis in support of the trial court's decision.") (internal quotation marks omitted). Therefore, we shall provide guidance on this point in anticipation of remand.

The Circuit Court concluded that "since [Petitioners] did not specifically assert a claim for wrongful interference in the federal district court case, the statute of limitations will not date back to or be tolled from the filing of the district court case." This conclusion was

37

based on the Circuit Court's interpretation and application of 28 U.S.C. § 1367(d) ("supplemental jurisdiction"). We have explained:

> [28 U.S.C.] § 1367(d) serves to suspend the running of a State statute of limitations from the time the State-law claim is filed in U.S. District Court until 30 days after (1) a final judgment is entered by the U.S. District Court dismissing the pendant State-law claims, or (2) if an appeal is noted from that judgment, issuance of an order of the U.S. Court of Appeals dismissing the appeal or a mandate affirming the dismissal of those claims by the District Court.

*Turner v. Knight*, 406 Md. 167, 189, 957 A.2d 984, 996 (2008). 28 U.S.C. § 1367(d) provides:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

The Circuit Court in this case concluded that "'[a]sserted' under § 1367(d) is not read broadly to include state law claims not expressly asserted in the federal complaint, despite the fact that the state complaint may contain the same facts." At least one other state court has agreed with this conclusion. In *Rester v. McWane, Inc.*, 962 So. 2d 183 (Ala. 2007), cited by the Circuit Court in this case, the Supreme Court of Alabama held that "[u]nder 28 U.S.C. § 1367(d), the statute of limitations for state-law claims is tolled only when a party seeks to refile in the state court the same state-law claims the party asserted in the federal court." 962 So. 2d at 186. United States District Courts have held similarly. *See In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 721 (N.D. Ohio 2010) *aff'd sub*

38

*nom. In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013) ("[O]nly those state law claims actually asserted in [the federal case] are subject to statutory tolling [under § 1367(d).]").

Petitioners rely on a Kansas appellate court case in support of their position. Specifically, they point to where the Kansas Court of Appeals stated that where "[p]laintiffs filed their petition . . . within the 30-day window created by 28 U.S.C. § 1367(d) . . . any theories of state law liability fairly within the notice provided to Brown County in the federal complaint should be treated as timely for limitations purposes." *Estate of Belden v. Brown Cnty.*, 261 P.3d 943, 975 (Kan. Ct. App. 2011). The Kansas case is inapposite, however. The plaintiffs in *Belden* first filed suit in federal court alleging both constitutional and state-law claims against Brown County, through its board of commissioners, individual commissioners, the county sheriff, and several jail employees, resulting from the death of Belden while he was incarcerated in a county jail. *Id.* at 950. Following dismissal by the federal court, the plaintiffs refiled their state-law claims in a new case in state court within the 30 day time period provided by 28 U.S.C. § 1367(d). *Id.* at 975. In the state court, the county argued that it could not be held vicariously liable based on the statute of limitations, because the "[p]laintiffs did not include a specific assertion of vicarious liability in their federal court complaint." *Id.* at 974. The appellate court disagreed, holding that the county "fail[ed] on its statute of limitations argument because [p]laintiffs' federal complaint provided sufficient notice to the [c]ounty that it faced vicarious liability for the alleged

39

negligence of various Sheriff's Department employees." *Id.* at 975. The court specifically rejected the plaintiffs' argument that a vicarious liability theory would "relate back" to the filing of the federal case. *Id.* at 974. Thus, the court's conclusion rested on the fact that the plaintiffs had adequately asserted claims for liability against the county as an employer, even though in the original federal complaint the plaintiffs had not used the words "respondeat superior" or "vicarious liability." *Id.* at 974-75.

Unlike the Kansas case, where the plaintiffs simply refined their state law claims, the Petitioners in this case asserted an entirely new cause of action for wrongful interference with easement rights. Under 28 U.S.C. § 1367(d), "in order to benefit from tolling, the claim must have been expressly asserted in federal court." *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d at 721-22 (holding that "only the state law claims . . . which were expressly alleged [in the prior federal suit] may be tolled"). Accordingly, where Petitioners failed to assert a claim for wrongful interference with easement rights in their federal suit, and did not file their state suit including the wrongful interference claim until more than four years after the latest possible accrual date, that claim is barred by the statute of limitations. We therefore affirm the dismissal of Count XII.

### MHG & Riggs

As an alternate ground for dismissing Counts XII and XIII against MHG and Riggs, the Circuit Court concluded that MHG and Riggs owed no duty of care to Petitioners and therefore could not be liable to Petitioners for their wrongful interference with easement

40

rights or slander of title claims. Although the Court of Special Appeals did not address this issue, because it affirmed dismissal of Counts XII and XIII on other grounds, as we stated above, we shall review the alternate ground for the trial court's decision to provide guidance in anticipation of remand. As we have affirmed the dismissal of Count XII on the basis of limitations, we shall focus solely on Count XIII ("slander of title").

In reaching its decision, the Circuit Court relied on *Carlotta v. T.R. Stark & Assocs., Inc.*, 57 Md. App. 467, 470 A.2d 838 (1984). In *Carlotta*, the plaintiffs brought suit against adjacent landowners for continuing trespass, and against the adjacent landowners' surveyor for aiding and abetting the landowners "by negligently preparing an erroneous survey plat of the disputed property boundary." 57 Md. App. at 469, 470 A.2d at 838. The trial court sustained the surveyor's demurrer for failure to state a cause of action. *Carlotta*, 57 Md. App. at 469, 470 A.2d at 838-39. The Court of Special Appeals affirmed, holding that "a surveyor of a disputed boundary line does not owe a duty of care to a non-reliant third party adjacent landowner." *Carlotta*, 57 Md. App. at 472, 470 A.2d at 840.

*Carlotta* is inapposite to the instant case, however, because it involved a claim sounding in *negligence*, in which the plaintiff was required to prove the predicate duty of care. *See also Bacon v. Arey*, 203 Md. App. 606, 664, 40 A.3d 435, 470 (2012) (quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414, 879 A.2d 1088, 1092 (2005)) ("There can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another."). Conversely, in this case, Petitioners' Count XIII alleges

41

an action for *intentional* slander of title. Petitioners have alleged no duty of care or any breach thereof on the part of Respondents, and there is no contention by Respondents that duty of care or breach thereof is an element of a claim for slander of title.

As we have stated, our review at the motion to dismiss stage is limited to whether Petitioners pled sufficient facts to support a claim. To support a claim for slander of title, a plaintiff must plead facts sufficient to show (1) a false statement, (2) that the false statement was communicated to someone else (publication), (3) malice, and (4) special damages. *See Beane v. McMullen*, 265 Md. 585, 607-09, 291 A.2d 37, 49 (1972) (quoting Prosser, Law of Torts (4th ed. 1971)). *See also Rite Aid Corp. v. Lake Shore Investors*, 298 Md. 611, 625, 471 A.2d 735, 742 (1984) ("Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons."). In the Amended Complaint, Petitioners allege that MHG and Riggs engaged in wrongful and intentional conduct, which subsequently caused them injury. Essentially, Petitioners in this case allege that MHG and Riggs were involved with Brown and the Areys in a scheme to erase Farm Road. Petitioners specifically set forth facts related to the alleged falsity of the survey documents, and that MHG and Riggs had knowledge of the falsity when the documents were created and submitted to the Commission. Petitioners allege that the false survey documents were submitted to and approved by the Commission, and filed in the land records. Finally, Petitioners allege that the publication of the false surveys has affected the marketability of their title, such that they have been unable to list their properties for sale, thus alleging

42

pecuniary damages.  We conclude that these allegations are sufficient to survive a motion to

dismiss on grounds that MHG and Riggs owed no duty of care to Petitioners.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  THE PARTIES TO ABIDE THEIR COSTS.**